**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DISVISION**

| | |
|---|---|
| **PINNACLE WASTE SERVICES, LLC and PARKS AUTO PARTS, INC.** | |
| Plaintiff, | |
| v. | |
| **WASTE CONNECTIONS US, INC., WASTE CONNECTIONS OF THE CAROLINAS, WASTE CONNECTIONS OF SC, INC. and CAROLINA WASTE & RECYCLING LLC** | C.A. No.: 7:21-cv-02600-DCC  CLASS ACTION |
| Defendants. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Pinnacle Waste Services, LLC and Parks Auto Parts, Inc. files this Class Action Complaint against Defendants Waste Connections US, Inc., Waste Connections of the Carolinas, Inc., Waste Connections of SC, Inc. and Carolina Waste & Recycling LLC (collectively "Waste Connections" or "Defendants") on behalf of itself and all others similarly situated in the United States.  In support thereof, Plaintiffs state the following:

## I.    NATURE OF THE CASE

1.    Waste Connections has engaged in a widespread and systematic practice of overcharging its customers through two separate, but related, coordinated schemes: charging unlawful and excessive "fuel and material surcharges" and price increases.

2.    Waste Connections is one of the largest solid waste disposal companies in the United States, with nearly $5 billion in annual revenue.  For years, it entered into standardized form agreements with businesses like Plaintiffs across the country. These agreements establish that Waste Connections will provide solid waste disposal service for a fixed price over a course of

years. The uniform language at issue in these agreements specifies that Waste Connections may increase this fixed price, but only to pass-through specific increases in costs it might incur in providing services. Waste Connections has breached the contract it entered into with every class member by overcharging them through two courses of conduct.

3.     First, the uniform contractual language present in every class member's contract establishes that Waste Connections may only pass through increases in fuel and material costs to customers that Waste Connections itself incurs. And Waste Connections purportedly does so through a fee it calls a "Fuel & Material Surcharge."[1] But, in truth, this fee is wholly unrelated to any such increased costs, does not pass through any such costs. In fact, during the time period at issue, Waste Connections effectively has no increased fuel or material costs, nor has it ever attempted to quantify such costs or to tie the methodology or amount of the "Fuel & Material Surcharge" to such costs. Rather, the "Fuel & Material Surcharge" is a hidden profit device that Waste Connections uses solely to pad its profits at its customers' expense in violation of the uniform contractual language.

4.     Second, the contractual language at issue provides that Waste Connections may increase rates to pass through increases in the Consumer Price Index ("CPI"), a common measure of inflation. But, again, in blatant violation of this contractual limitation, Waste Connections has deliberately and repeatedly overcharged customers through automated price increases that far outstrip CPI. These price increases are imposed frequently and are significant in amount, often exceeding 50% over the course of a contractual term, and greatly exceed any actual CPI increase. Waste Connections itself acknowledges that "inflation has not materially affected our operations

---

[1] To the extent this fee is charged as separate line items, the allegations herein encompass those charges as well.

2

in recent years." *See* 2018 Waste Connections, Inc. Form 10-K, p. 72. Through price increases that exceed CPI, Waste Connections has breached the form contractual language that it entered into with Plaintiffs and every member of the putative class.

5.    Further, this case presents a prototypical situation for class treatment. Waste Connections' conduct—including all relevant practices, conduct, and documents—is uniform among all customers. The application of common law to an identical course of conduct will determine liability for the classes as a whole, ensuring that the rights of thousands of businesses are vindicated through the efficiency of a single trial.

## II. JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $5,000,000 for each proposed class, each proposed classes consist of more than 100 members, and minimal diversity exists (Plaintiffs are citizens of South Carolina, putative class members are citizens of at least forty states, and Defendants are citizens of Delaware). Waste Connections has more than one million customers, the majority of which, upon information and belief, entered into the form contract at issue and were subject to the price increase and fuel surcharge practices at issue here.

7.    This Court has personal jurisdiction of Defendants because each is authorized to do business and in fact does business in this district, the conduct at issue in this case partly originated and took place in district, and Defendants could reasonably anticipate litigation in this district under traditional notions of fair play and substantial justice.

8.    Venue is proper in this Court under 28 U.S.C. § 1391 and the Court's Local Rules. Plaintiff Pinnacle Waste Services is located in this judicial district, and the conduct giving rise to Plaintiffs' claims occurred in this judicial district.

### III.    PARTIES

9.      Pinnacle Waste Services, Inc. is a South Carolina entity with its principal place of business in Spartanburg County, South Carolina.

10.      Parks Auto Parts, Inc. is a South Carolina entity with its principal place of business in North Charleston, South Carolina.

11.      Plaintiffs' experience with Waste Connections is typical of the classes in all relevant aspects.  Plaintiffs entered into a form contract with Waste Connections. Plaintiffs were subsequently invoiced and paid multiple "Fuel & Material Surcharges" to Waste Connections within the statutory period while under the form contract. Further, during the statutory period and under the form contract, Waste Connections unilaterally and unlawfully implemented automated price increases that affected Plaintiffs on multiple occasions (in that Plaintiffs paid the price increases), none of which complied with the contractual terms. The direct and proximate result of these unlawful, deceptive, and unfair automated price increases is that Plaintiffs has been damaged by paying more than agreed.

12.      Waste Connections US, Inc., Waste Connections of the Carolinas, and Waste Connections Palmetto, Inc. are Delaware corporations with their principal place of business in Texas.  Carolina Waste & Recycling LLC is a South Carolina corporation with its principal place of business in South Carolina.

13.      Defendants, and their related entities, operate as a single organization with regard to the conduct at issue in this lawsuit. Waste Connections US, Inc. shares management structure and financial accounting with its subsidiaries and parent company, Waste Connections, Inc., and any legal distinction between these entities and its subsidiaries is a fiction designed to limit liability.   These subsidiaries (including Waste Connections of the Carolinas, Inc., Waste

Connections Palmetto, Inc., and Carolina Waste & Recycling LLC) are the alter ego of their parent corporations in that the parent corporations control all aspects of the business. Waste Connections US, Inc., and its parent company Waste Connections, Inc., were directly involved in—and responsible for—the conduct alleged herein. It designed, implemented, charge, and collect the Fuel & Material Surcharges and price increases, which contribute directly to their profit margins. Generally, upon information and belief, Waste Connections US, Inc. (in coordination with Waste Connections, Inc.) assesses the fees and price increases, determine the amount of the fees and price increases, and invoice for and collect payment for the fees and price increases, while the state subsidiaries provide physical services and assists in the charging and collecting of the fees and price increases. All management level decisions are made by Waste Connections US, Inc. (in coordination with Waste Connections, Inc.) and all subsidiaries have no discretion in following such decisions.

## IV.     FACTUAL ALLEGATIONS

14.     Waste Connections is one of the largest waste disposal companies in the United States, with "millions of customers," locations in forty-one states, and over $5 billion in annual revenue.

15.     Plaintiffs are businesses South Carolina.  For their businesses, Plaintiffs requires solid waste disposal services and, like thousands of other businesses, entered into standardized agreements with Waste Connections to provide these services.   These agreements are long-term contracts that primarily establishes a set rate for disposal services and which contains standardized language that governs if and how Waste Connections may be able to increase rates to pass through specific costs it incurs during the pendency of that contact.   And, like thousands of other businesses, after locking customers into these long-term contracts, Waste Connections unilaterally

imposed unlawful "Fuel & Material Surcharges" and systematically increased prices with no contractual justification.

16.     First, the Fuel & Material Surcharges violates the standard provision the contract which establishes that Waste Connections can only pass through its actual increased fuel and material costs to customers, and (when doing so) such costs must be passed through "proportionately" or "as a result of" such increases. The fees Waste Connections calls "Fuel & Material Surcharges," are not, in fact true surcharges at all; they are not related to Waste Connections' increased fuel or material costs, charged to recovered such increased costs, or applied to recoup such costs. In fact, Waste Connections' "Fuel & Material Surcharges" have no relationship to increased fuel or material costs at all, and such costs are regardless recovered through other pricing and fee mechanisms. This conduct breaches the form contracts.

17.     Second, Waste Connections systematic, automated price increases do not—in intent or effect—adjust for increases in the Consumer Price Index as required by the uniform contractual provisions.  Rather, after entering into long-term, fixed-price contracts, Waste Connections carries out a deliberate scheme to repeatedly increase prices without contractual justification by amounts that far exceed CPI.  Upon information and belief, it does so through a consistent, centralized automated price increase process that was intended to glean tens of millions of dollars of unearned profit from its customers.   This conduct breaches the form contract.

**A.     The Standardized, Uniform Contractual Language At Issue.**

18.     Waste Connections used two effectively standardized "customer service agreements" to contract with putative class members, and every putative class member entered one of these effectively identical form contracts.  All relevant terms are pre-printed by Waste Connections, including the uniform provisions that governs the Fuel & Material Surcharge and

price increases at issue in this litigation.

19.     One form contract (the Waste Connections Contract) is used by Waste Connections to enter into agreements with customers across the country, including in South Carolina, and Plaintiff Pinnacle entered into such contracts.  The second form contract (the Carolinas Contract) is used by Waste Connections for customers primarily in the Carolinas, and Plaintiff Parks Auto entered into such contracts.  The language in the two form contracts is effectively identical—both limit Waste Connections ability to charge for CPI, fuel and material increases, and other price increases it incurs to a pass through of those actual costs—and all class members are bound together by the same course of conduct Waste Connections carried out through its price increases and Fuel/Material Surcharges, but for purposes of clarity Plaintiffs will set out the specific provisions here.

20.     The Waste Connections Contract "Rate Adjustments" provision states:

Customer agrees that the rates charged by Contractor hereunder shall be increased from time to time to adjust for increases in the Consumer Price Index. Because disposal, fuel, materials and operations costs constitute a significant portion of the cost of Contractor's services provided hereunder, Customer agrees that Contractor may increase the rates hereunder proportionately to adjust for any increase in such costs….

21.     The Carolinas Contract "Charges" provision also states:

Contractor may increase the fees and charges to Customer as a result of increases to Contractor in fuel costs or disposal fees….Contractor may increase the fees and charges to Customer from time to time based upon the percentage increase, if any, in the consumer price index for all urban consumers, U.S. City average….

22.     Thus, under the express terms of either and both provision, Waste Connections may pass through its "increase" in "fuel and materials" costs to customers, and, if it does so, not only must such charges be a pass through that reflects its actual costs, the must be "as a result of" such increases and "proportional" to such increases.  Waste Connections purportedly passes through

these costs through a line item on customers invoices called a "Fuel & Material Surcharge." Similarly, Waste Connections may increase rates only to reflect "increases in the Consumer Price Index" and "based upon the percentage increase, if any" in CPI. Waste Connections purportedly does so through systematic, automated price increases that are generally imposed at the beginning of each year.

23.     Aside from establishing the fixed rate for service and the limited manner in which Waste Connections may charge more than this rate, the form contract also contains other relevant standard provisions which (a) establish a long term of at least three years, (b) integrate the contract and limit its interpretation to the four corners of the document itself, and (c) allow Waste Connections punitive remedies in the event a customer refuses to pay the unlawful fees and price increases.

**B.     Waste Connections' Unlawful "Fuel & Material Surcharge."**

24.     Waste Connections charges its customers a fee it calls a "Fuel & Material Surcharge." It does so, purportedly, to proportionately pass through the increased fuel and material costs it incurs in providing services to customers in accordance with the contractual language in the Rate Adjustments provision. Generally, this fee is a percentage of the service rate and is significant in amount, reaching over 12% or hundreds of dollars a month for some customers. Waste Connections periodically increases the percentage of the "Fuel & Material Surcharge," but, upon information and belief, has never decreased this percentage.

25.     The "Fuel & Material Surcharge" in no way passes through any increased fuel or material costs Waste Connections incurs in providing services. It is wholly unrelated to Waste Connections' actual or increased fuel and material costs, and is not charged to defray those increased costs. Waste Connections does not apply the money received from the "Fuel & Material

Surcharge" to offset any such increased costs; rather, it is recognized as revenue and contributes directly to Waste Connections' profit. Further, Waste Connections does not even incur or track any increased "material costs," and in fact profits off from "materials" through its recycling processes. Similarly, it has little, if any increased "fuel costs," particularly on a per-customer basis, as it enters into fixed-price fuel purchase contracts.

26.     Waste Connections did not design the "Fuel & Material Surcharge" to adjust for or pass through any increased costs it incurs, and this fee far over-recovers any such costs. The method by which Waste Connections determines the "Fuel & Material Surcharge" has no relation to its increased fuel or material costs or to any changes in those costs. It is arbitrary in that the only driving factor is the profit Waste Connections seeks to derive from this fee while maintaining the false appearance of the fee as a legitimate charge related to specific, discrete increased costs. Waste Connections has done no legitimate analysis to determine the proper amount of the "Fuel & Material Surcharge" in connection to its actual increased fuel or material costs. Waste

27.     Indeed, the "Fuel & Material Surcharge" does not fluctuate in any way with Waste Connections' fuel or material costs and has increased while its per-customer fuel costs have decreased. For example, Waste Connections repeatedly increased its "Fuel & Material Surcharge" at the same time that fuel costs decreased.[2]

28.     Additionally, Waste Connections already fully recovers any increased fuel or material costs that purportedly justify this fee through the base price it charges customers and increases to that price. These prices include the individual component costs of Waste Connections' business, including—specifically—the costs of fuel, "materials," and other overhead. When setting and increasing prices, Waste Connections takes into account its fuel costs to recover such

---

[2] Again, Waste Connections does not incur any increases in "material costs."

costs, and the "Fuel & Material Surcharge" is wholly unlawful as it does not reflect any increased costs that are not already recovered.

29.     Waste Connections uniform practices in setting and charging the "Fuel & Material Surcharge" violate the form contract that each putative class member entered into because this fee does not proportionately adjust rates for increases in fuel or material costs. Waste Connections' conduct breaches the uniform contractual language it entered into with Plaintiffs and thousands of others businesses across the country, violates the duty of good faith and fair dealing that underpins that contract, and has resulted in it being unjustly enriched at its customers' expense.  As a direct result of its unlawful "Fuel & Material Surcharge" conduct, Waste Connections has wrongfully taken tens of millions of dollars from its customers.

**C.     Waste Connections' Unlawful, Unilateral Price Increase Practice.**

30.     Waste Connections has further violated the form contract by systematically increasing rates by more than increases in the Consumer Price Index. The form contract provides that Waste Connection may "increase" rates only to pass through increases in CPI.

31.     Waste Connections has carried out a systematic and deliberate practice of repeatedly increasing rates by more than CPI in violation of the contractual language at issue. Waste Connections induces customers into entering into form contracts with fixed prices while knowing, but not disclosing, that it has an internal corporate practice and strategy of continually, invariably, and unlawfully increasing rates by more than allowed by contract.

32.     Waste Connections unilaterally imposes automated increases at least annually, and often more frequently.  Upon information and belief, these price increases are directed by Waste Connections' corporate officers as part of a broad strategy to increase profit and are carried out through an automated process using Waste Connections' customer relationship management

system.

33.     The amount of the price increases varies, but are significant, and can result in customers paying more than 50% more than agreed by the end of the initial term of their agreement. Each increase Waste Connections imposed on class members exceeds CPI increases, and the totality of such increases similarly far out-strip CPI increases over any given time period.  Upon information and belief, based upon investigation, Waste Connections imposed price increases identical in timing, methodology, and intent (and similar if not identical in percentage) as across most of its customer base each year during the relevant time period.

34.     These unilateral automated price increases violate the form contractual language that governs them and is present in every contact at issue, because they exceed CPI increases and have no other contractual justification.  There is no legal justification for Waste Connections' practice of unilateral, systematic price increases.[3] Waste Connections knows when it presents contracts for fixed prices that it will inflate these prices precipitously and continually.  Waste Connections' practices breach the form contractual language it entered into with Plaintiffs and thousands of others businesses across the country, violates the duty of good faith and fair dealing that underpins that contract, and has resulted in it being unjustly enriched at its customers' expense. As a direct result of its unlawful rate increase conduct, Waste Connections has wrongfully taken tens of millions of dollars from its customers over the statutory period.

> **D.     Neither Plaintiffs, Nor Any Putative Class Member, Had Full Knowledge Of The Fuel And Material Surcharges Or Rate Increases Or Could Have Consented To Such Charges.**

---

[3] No customer consented to these increases; they were unilaterally imposed by Waste Connections which ensures that there is no avenue for customer choice or negotiation (even if customers could have discovered the violations at issue) through stringent, punitive liquidated damages and attorney's fees provisions.  Further, any defense of consent is an affirmative defense which is amenable to resolution through common evidence (including that no customer could have consented under applicable law).

35.     No putative class member, including Plaintiffs had "full knowledge" of the facts pertaining to the "fuel surcharge" or rate increases such that would allow them to realize or act on their legal claim.

36.     Waste Connections ensures that customers cannot discover the true nature, purpose, and use of the "Fuel & Material Surcharge."  Waste Connections uniformly uses this term to charge this fee to Plaintiffs and putative class members.  It does so consistently and continually, including every time it assesses the fee on monthly invoices.  Waste Connections chose this term for a reason: it has a common, understood meaning for any reasonable consumer, including for Plaintiffs and putative class members, and indicates that it is a fee charged to recover specific increased fuel and materials costs incurred by Waste Connections is related to such costs, and is used to offset or recover such costs, as required by the form agreement. *See, e.g., Deere Constr., LLC v. Cemex Constr. Materials, LLC,* 198 F. Supp. 3d 1332 (S.D. Fla. 2016) ("What is allegedly deceptive is that the so-called 'fuel surcharges' and 'environmental charges,' labeled as such by Defendants, were not in fact designed to cover anything related to fuel or the environment. Defendants chose the two adjectives that describe the fees being assessed. Each adjective carries meaning"); *Dover v. British Airways, PPLC (UK)*, 2013 WL 5970688, at *4 (E.D.N.Y. Nov. 8, 2013) ("The plain meaning of the term 'fuel surcharge' is a supplemental charge that is reasonably related to or based upon the cost or price of fuel. This understanding comports with conventional usage.").  The Oxford English Dictionary defines "surcharge" as "an additional charge or payment."

37.     By using this fee term—as opposed to a fee term that is general or accurate, like "service charge" or "additional profit fee"—Waste Connections deliberately misled Plaintiffs and putative customers as to the nature, purpose, and use of this fee. Waste Connections also omitted material facts regarding the "Fuel & Material Surcharge," including that it is not related to any

actual increased fuel or material costs, that Waste Connections' increased costs are not used to set the fee, that Waste Connections has no "increased material costs," and that the fee contributes directly to Waste Connections' profit margins.

38.     Further Waste Connections ensures that no customer could or would discover the true nature and illegality of the rate increases. For example, Waste Connections does not disclose what CPI measure it purportedly is using or the amounts, frequency, and timing of the rate increases.  Nor does Waste Connections disclose the methodology—or lack thereof—that purportedly justifies the increase or the amount of the increases.  Waste Connections does not disclose that the increases are unrelated to any actual costs that it incurs, nor does it disclose those costs—or lack thereof—to customers. Without such information, no customer could determine the illegality of a given rate increase imposed by Waste Connections.

39.     Further, Plaintiffs and each putative class member was under a contractual, legal obligation to pay the invoiced charges to Waste Connections.  Upon information and belief, Waste Connections enforces its form contracts—including punitive liquidated damages and attorney's fees provision—to ensure that customers cannot escape them, even if such customers could have known that the fuel surcharges and price increases were unlawful and deceptive.

       **E.     Tolling Of Any Applicable Statute Of Limitations.**

40.      Neither Plaintiffs, nor any putative class member, through the exercise of reasonable diligence, could have known that any cause of action arose for the wrongful conduct at issue.  Waste Connections' conduct is continual in nature, in that it devised, implemented, charged and, collected the wrongful and deceptive charges from class members as part of a single scheme. It constitutes a continuing wrong which, further, no class member could have been aware of the true nature and purpose of the "Fuel & Material Surcharge" or of the unlawful price increases as

13

Waste Connections actively hid these facts from its customers (as discussed above) including by naming the fees deceptively, charging the fees and price increases in a manner and with descriptions which would cause a reasonable customer to believe they were legitimate, and failing to disclose facts which would have shown this deception to be false.

## V.     CLASS ACTION ALLEGATIONS

41.     Plaintiffs bring this action pursuant to Rule 23(a) and (b)(3), and proposes the following classes:

**The Surcharge Class:** All persons or entities who reside in the United States who entered into a contract with Waste Connections that provides "[b]ecause disposal, fuel, materials and operations costs constitute a significant portion of the cost of Contractor's services provided hereunder, Customer agrees that Contractor may increase rates hereunder proportionately to adjust for any increase in such costs" and paid Waste Connections a "Fuel & Material Surcharge."

**The Carolinas Surcharge Class:** All persons or entities who reside in the United States who entered into a contract with Waste Connections that provides "Contractor may increase the fees and charges to Customer as a result of increases to Contractor in fuel costs or disposal fees…." and paid Waste Connections a "Fuel & Material Surcharge."

**The Rate Increase Class:** All persons or entities who reside in the United States who entered into a contract with Waste Connections that provides "Customer agrees that the rates charged by Contactor hereunder shall be increased from time to time to adjust for increases in the Consumer Price Index" and paid more than the rates reflected on their contract as a result of increases.

**The Carolinas Rate Increase Class:**

All persons or entities who reside in the United States who entered into a contract with Waste Connections that provides "Contractor may increase the fees and charges to Customer from time to time based upon the percentage increase, if any in the consumer price index" and paid more than the rates reflected on their contract as a result of increases.

42. Excluded from the proposed classes are customers who entered into a contract which contains an arbitration provision or class waiver.

43. Also excluded from the proposed classes are members of the judiciary who preside over this case or related litigation, entities currently in bankruptcy, entities whose obligations have been discharged in bankruptcy, and governmental entities.

44. As used in these class definitions, "Waste Connections" means Waste Connections US, Inc., Waste Connections of the Carolinas, Inc., Waste Connections of SC, Inc. and Carolina Waste & Recycling LLC, and all related entities, predecessors, subsidiaries, affiliates, and parent companies.

45. As used in these definitions, "Fuel & Material Surcharge" includes this fee regardless of the nomenclature used to charge it, and includes any "fuel surcharge" or "material surcharge" charged as separate line items.

46. Plaintiffs maintain the right to create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

**A.     Existence And Predominance Of Common Questions Of Law And Fact.**

47. Waste Connections engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation. This common course of

conduct— imposing "Fuel & Material Surcharges" and rate increases that were unlawful and excessive—effected class members in the exact same manner. The amount of damages may differ among class members, but the fact and type of damages is uniform among all class members and flows directly from Waste Connections' common conduct. Uniform, pre-printed form contracts will govern all class members' contractual claims. Extraneous contractual evidence is prohibited by a form integration clause

48.    This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist. Such common questions include, but are not limited to, the following:

a.    Whether Waste Connections used standard form contracts with customers;

b.    Whether Waste Connections imposed rate increases on putative class members who entered into the standard contract;

c.    Whether Waste Connections' standard contract only allowed Waste Connections to increase rates to adjust for increases in the Consumer Price Index;

d.    Whether Waste Connections' rate increases exceeded increases in the Consumer Price Index;

e.    Whether the rate increases Waste Connections enacted were not in good faith;

f.    Whether the rate increases Waste Connections enacted resulted in it being unjustly enriched;

g.    Whether Waste Connections assessed "Fuel & Material Surcharges" to customers;

h.    Whether the "Fuel & Material Surcharges" Waste Connections imposes is designed or intended to pass through Waste Connections' increased fuel and material costs;

i.    Whether Waste Connections has any increased fuel or material costs;

j.      Whether Waste Connections recovers the same costs which purportedly justify the "Fuel & Material Surcharges" through other means, including base rates and increases to such rates;

k.      Whether Waste Connections uses revenue from the "Fuel & Material Surcharges" to offset its increased costs;

l.      Whether the "Fuel & Material Surcharges" exceed any increased fuel and material costs it may incur;

m.      Whether the "Fuel & Material Surcharges" breach the form contract;

n.      Whether the "Fuel & Material Surcharges" violate the duty of good faith and fair dealing;

o.      Whether Waste Connections has been unjustly enriched by the "Fuel & Material Surcharges."

**B.      Numerosity.**

49.      The total number of members of each putative class is so numerous that individual joinder is impracticable. Waste Connections has over a million customers nationwide, and each class contains more than 100,000 members.

**C.      Typicality.**

50.      The claims of the named Plaintiffs are typical of the claims of the classes. Plaintiffs, like other class members, entered into the form contract, paid automated price increase that were not legally justified and paid unlawful "Fuel & Material Surcharges." Plaintiffs were subject to, and harmed by, the exact same common policies and practices which effected all class members.

**D.      Adequacy.**

51.      Plaintiffs will fairly and adequately protect the interests of the members of the

class and has no interest antagonistic to those of other class members. Plaintiffs share the same interests and was harmed by the same conduct as each other class member. Resolution of this case will inherently vindicate and redress the interests of Plaintiffs equally with class members. Plaintiffs have retained class counsel competent and experienced in prosecuting class actions and such class counsel is financially able to represent the classes.

### E.    Superiority and Manageability.

52.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the class is impracticable. While the total amount at issue in this litigation is very large, individual damages for a given plaintiff are comparatively small and class members have little incentive to pursue individual claims. The interests of judicial economy favor adjudicating the claims for the classes in a single forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision. The proposed class definitions are objective and class membership is easily determined using customer information and financial records maintained by Waste Connections. Calculation of damages can be accomplished using systematic means and objective criteria. The class action mechanism is administratively feasible and provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (Rate Increase Classes)

53.    All allegations and paragraphs in this complaint are incorporated by reference.

54.    Plaintiffs and each member of the Rate Increase Class entered into standardized agreements with Waste Connections which contain identical relevant contractual language.

55.     Plaintiffs and each member of the class performed on their agreements, including by paying Waste Connections for services.

56.     As set out herein, through its practice of unilaterally increasing rates by more than increases in the Consumer Price Index, Waste Connections breached the agreements.

57.     Plaintiffs and each member of the Rate Increase Class have been directly and proximately harmed by Waste Connections' breach of contract in that each paid more than allowed by contract.

## COUNT II
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (Rate Increase Classes)

58.     All allegations and paragraphs in this complaint are incorporated by reference.

59.     To the extent necessary, this count is pled in the alternative.

60.     Plaintiffs and each member of the class entered into standardized agreements with Waste Connections which contain identical relevant contractual language.

61.     Plaintiffs and each member of the class performed on their agreements, including by paying Waste Connections for services.

62.     Waste Connections failed to perform on the agreements in good faith.  Waste Connections acted arbitrarily and capriciously. It failed to fulfill any discretionary duties it might have under the contract to adjust rates prices reasonably and in good faith.  Waste Connections' uniform course of conduct in raising rates lacks honesty in fact and is inconsistent with the justified expectation that Waste Connections would increase rates reasonably and only in accordance with the terms of the uniform contract. Through its wrongful conduct, Waste Connections unfairly prevented Plaintiffs and each member of the class from receiving the full benefits of their agreements.

63.     Plaintiffs and each member of the class have been directly and proximately harmed by Waste Connections' breach of the covenant of good faith and fair dealing in that each paid an unlawfully increased rate.

## COUNT III
## UNJUST ENRICHMENT
### (Rate Increase Classes)

64.     All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

65.     To the extent necessary, this count is plead in the alternative.

66.     Through its rate increase practices, Waste Connections received money from the putative class which in equity and justice it should not be permitted to keep.    By imposing rate increases which it knew to be not justified by any related increase and which do not adjust for changes in the Consumer Price Index, by suppressing and misrepresenting material facts (including that it would charge far more than agreed or represented), and by engaging in other wrongful and unlawful conduct as set out herein, Waste Connections obtained money which properly belongs to the putative class.  The benefit conferred by the putative class was non-gratuitous and Waste Connections realized value from this benefit. It would be inequitable for Waste Connections to retain this benefit.

67.     Plaintiffs and each member of the Rate Increase Class have been directly and proximately harmed by Waste Connections conduct in that each paid more for products and services than they rightfully owed.

## COUNT IV
## BREACH OF CONTRACT
### (Surcharge Classes)

68.     All allegations and paragraphs in this complaint are incorporated by reference.

69.    Plaintiffs and each member of the Surcharge Class entered into standardized agreements with Waste Connections which contain identical relevant contractual language.

70.    Plaintiffs and each member of the class performed on their agreements, including by paying Waste Connections for services.

71.    As set out herein, through its practice of imposing "Fuel & Material Surcharges" that do not proportionately adjust for increases in fuel and material costs, Waste Connections breached the agreements.

72.    Plaintiffs and each member of the Surcharge Class have been directly and proximately harmed by Waste Connections' breach of contract in that each paid more than allowed by contract.

**COUNT V**
**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**
**(Surcharge Classes)**

73.    All allegations and paragraphs in this complaint are incorporated by reference.

74.    To the extent necessary, this count is pled in the alternative.

75.    Plaintiffs and each member of the class entered into standardized agreements with Waste Connections which contain identical relevant contractual language.

76.    Plaintiffs and each member of the class performed on their agreements, including by paying Waste Connections for services.

77.    Waste Connections failed to perform on the agreements in good faith.  Waste Connections acted arbitrarily and capriciously. It failed to fulfill any discretionary duties it might have under the contract to adjust rates prices reasonably and in good faith.  Waste Connections' uniform course of conduct in assessing unlawful, excessive and deceptive "Fuel & Material Surcharges" lacks honesty in fact and is inconsistent with the justified expectation that Waste

Connections would only pass through the actual increased fuel & material costs it might incur in accordance with the terms of the uniform contract. Through its wrongful conduct, Waste Connections unfairly prevented Plaintiffs and each member of the class from receiving the full benefits of their agreements.

78.     Plaintiffs and each member of the Surcharge Class have been directly and proximately harmed by Waste Connections' breach of the covenant of good faith and fair dealing in that each paid an "Fuel & Material Surcharges."

**COUNT VI**
**UNJUST ENRICHMENT**
**(Surcharge Classes)**

79.     All allegations and paragraphs, aside from other counts, in this complaint are incorporated by reference.

80.     To the extent necessary, this count is plead in the alternative.

81.     Through its practices in charging "Fuel & Material Surcharges," Waste Connections received money from the putative class which in equity and justice it should not be permitted to keep.   By imposing surcharges which it knew to be not justified by any related increase costs and which do not adjust for any increases in fuel or material costs, by suppressing and misrepresenting material facts (including that these surcharges were deceptive), and by engaging in other wrongful and unlawful conduct as set out herein, Waste Connections obtained money which properly belongs to the putative class.  The benefit conferred by the putative class was non-gratuitous and Waste Connections realized value from this benefit. It would be inequitable for Waste Connections to retain this benefit.

82.     Plaintiffs and each member of the Surcharge Class have been directly and proximately harmed by Waste Connections conduct in that each paid excessive, deceptive, and

unlawful Fuel & Material Surcharges.

## VII.    PRAYER FOR RELIEF

83.    Plaintiffs, on behalf of themselves and each member of the putative classes, demands all remedies and damages available to it, including all unlawful rate increases paid, all "Fuel & Material Surcharges" paid, injunctive relief (including declaratory relief and a prohibition on future unlawful rate increases or surcharges), restitution, interest, and the attorneys' fees and costs incurred in bringing this action.

### Trial By Jury

Plaintiffs and the Classes are entitled to, and demand, a trial by jury.

Respectfully submitted,

*/s/ T. Ryan Langley*
T. Ryan Langley
HODGE & LANGLEY, PC
Federal ID No. 002537
229 Magnolia Street
PO Box 2765
Spartanburg, SC 29304
Phone:  850.222.2000
rlangley@hodgelawfirm.com

Brian C. Duffy
John P. Linton
Patrick C. Wooten
DUFFY & YOUNG, LLC
96 Broad Street
Charleston, South Carolina 29401
(843) 720-2044 (phone)
(843) 720-2047 (fax)

Paul S. Landis
FAYSSOUX & LANDIS ATTORNEYS AT LAW, P.A.
209 East Washington Street
Greenville, South Carolina 29601
Phone: 864.233.0445
Fax: 864.233.4781

paul@fayssouxlandis.com

Oscar M. Price, IV
Nicholas W. Armstrong
Garrett Owens
PRICE ARMSTRONG, LLC
2421 2nd Avenue North, Suite 1
Birmingham, AL 35203
Phone: 205.208.9588
Fax: 205.208.9598
oscar@pricearmstrong.com
nick@pricearmstrong.com
garrett@pricearmstrong.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on August 22, 2021, I filed the foregoing using the CM/ECF system which will send electronic notice of such filing to all counsel of record.

/s/ T. Ryan Langley
T. Ryan Langley

Attorney for Plaintiffs