IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Pinnacle Waste Services LLC,<br>Matthew Perry,<br><br>    Plaintiffs,<br><br>                v.<br><br>Waste Connections US Inc.,<br>Waste Connections of the Carolinas,<br>Waste Connections of SC Inc.,<br>Waste Connections Lone Star Inc.,<br><br>    Defendants,<br>_____<br><br>Waste Connections of SC Inc.,<br>Waste Connections of the Carolinas,<br><br>    Counter Claimants,<br><br>                v.<br><br>Pinnacle Waste Services LLC,<br>Jim Southerlin,<br><br>    Counter Defendants.[1]<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 7:21-cv-02600-JDA<br><br><br><br><br><br>**OPINION AND ORDER** |

This matter is before the Court on a motion by Pinnacle Waste Services, LLC ("Pinnacle") and Jim Southerlin ("Southerlin") (collectively, "Counter Defendants") to dismiss or, in the alternative, for other relief regarding counterclaims brought against them by Waste Connections of South Carolina, Inc. ("WCSC") and Waste Connections of North

---

[1] This caption represents the parties currently involved in this litigation.

Carolina, Inc. ("WCNC") (collectively, "Counter Claimants").[2]  [Doc. 183.]  Pinnacle filed this action on August 13, 2021, and later filed an Amended Complaint and a Second Amended Complaint.[3]  [Docs. 1; 32; 82.]  On April 9, 2024, Defendants filed an Answer and Counterclaims, and then on May 22, 2024, Counter Claimants filed an Answer and Amended Counterclaims (the "Counterclaims").  [Docs. 152; 169.]  On June 12, 2024, Counter Defendants filed a motion to dismiss the Counterclaims or, in the alternative, for other relief.  [Doc. 183.]  On July 10 and July 17, 2024, Counter Claimants filed a response opposing the motion and Counter Defendants filed a reply.  [Docs. 188; 189.]  The motion is ripe for review.

## BACKGROUND

In the Second Amended Complaint, Pinnacle alleges that it is a business that requires solid waste disposal services and Defendants are one of the largest solid waste disposal companies in the United States.  [Doc. 82 ¶¶ 2, 14, 15.]  The Second Amended Complaint alleges that Pinnacle and other putative class members entered into standardized long-term agreements with Defendants for waste disposal services (the "Contracts").  [*Id.* ¶¶ 2, 15, 18.]  Pinnacle alleges the Contracts established a baseline service rate, along with a provision for rate adjustments that authorizes Defendants to

---

[2] Plaintiffs named as Defendants Waste Connections US Inc.; Waste Connections of the Carolinas; Waste Connections of SC Inc.; and Waste Connections Lone Star Inc. ("Defendants").  [Doc. 82.]  In Defendants' Answer and Amended Counterclaims, they explain that "Waste Connections of the Carolinas" is actually a trade name for WCSC and WCNC and not a distinct entity that can be sued.  [Doc. 169 at 1 n.1.]

[3] This case was reassigned to the undersigned on February 14, 2024.  [Doc. 120.]

increase rates during the term of the contract. [*Id.* ¶¶ 2–4, 18–22.] Pinnacle alleges that the Contracts provided that adjustments could reflect increases based on inflation, as measured by the Consumer Price Index, or pass-through increases in certain of Defendants' costs, including fuel and materials. [*Id.* ¶¶ 3–4, 18–22.] Pinnacle claims that Defendants breached obligations under the Contracts by raising their rates beyond what the contracts allowed. [*Id.* ¶¶ 24–34.] Pinnacle brings this action on behalf of two putative nationwide classes of customers, alleging claims of breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment on behalf of each class. [*Id.* ¶¶ 41, 53–82.] Pinnacle seeks money damages, injunctive relief, restitution, interest, attorneys' fees, and court costs. [*Id.* ¶ 83.]

The Counterclaims allegedly "arise out of the same contracts that serve as the basis for Pinnacle's breach of contract claims" and assert that "Pinnacle did not pay the entirety of the sums due to [Counter Claimants] under the Parties' agreements." [Doc. 169 at 18 ¶ 5, 19 ¶ 14; *see id.* at 20–21 ¶¶ 16–18.] The Counterclaims include causes of action against Pinnacle and Pinnacle's owner, Southerlin, for breach of contract and unjust enrichment. [*Id.* ¶¶ 28–44.] Although Southerlin was not a party to any of the Contracts, he is allegedly liable under an "alter ego" theory. [*Id.* ¶¶ 21–27, 37, 43.]

In the motion before the Court, Counter Defendants argue that the Court lacks subject-matter jurisdiction over the Counterclaims because they are permissive counterclaims and no independent jurisdictional basis exists. [Doc. 183 at 5–8.] They alternatively argue that the Counterclaims are time barred and Counter Defendants are thus entitled to dismissal of the Counterclaims for failure to state a claim or, alternatively,

3

entitled to summary judgment on the Counterclaims. [*Id.* at 8–12.] They also argue alternatively that the Court should deny joinder of Southerlin under Rule 20 of the Federal Rules of Civil Procedure; decline to exercise supplemental jurisdiction over the Counterclaims against Southerlin; or strike the Counterclaims against Southerlin and quash his summons because the Counterclaims were asserted without leave of court. [*Id.* at 12–14.] Finally, Counter Defendants argue that the claims against Southerlin should be dismissed for failure to state a claim regarding alter-ego liability. [*Id.* at 3–5.]

## APPLICABLE LAW

**Rule 12(b)(1) Standard**

A motion to dismiss under Rule 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. Fed. R. Civ. P. 12(b)(1). The court may dismiss a case for lack of subject-matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (internal quotation marks omitted).

Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised in two ways: "facial attacks" and "factual attacks." *See Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *overruled on other grounds by Sheridan v. United States*, 487 U.S. 392 (1988). A facial attack questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction; the court analyzes a facial attack as it would a motion to dismiss under Rule 12(b)(6) such that "[t]he allegations in the complaint are taken as true, and materials outside the pleadings are not considered." *Id.* A factual

4

attack challenges the truthfulness of the jurisdictional allegations in the complaint, *id.*, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.*; *see also Dira v. Deutch*, No. 97-1119, 1998 WL 276236, at *1 (4th Cir. May 26, 1998) ("When such 'factual' challenges are asserted, a trial court may go beyond the allegations of the complaint, weigh the evidence, and satisfy itself as to its jurisdiction to hear the case."). A dismissal should be granted only in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg*, 945 F.2d at 768.

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id*. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id*. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. Further, Rule 56 provides in pertinent part:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Jurisdiction**

The Court first considers whether it has jurisdiction over the Counterclaims.[4]  "A federal court has ancillary jurisdiction over compulsory counterclaims, but it cannot entertain permissible counterclaims unless they independently satisfy federal jurisdictional requirements."  *Whigham v. Beneficial Fin. Co. of Fayetteville, Inc.*, 599 F.2d 1322, 1323 (4th Cir. 1979).  The Counterclaims here do not independently satisfy federal subject-matter jurisdiction requirements because they do not present a federal question, and the requirements of diversity jurisdiction are not met [*see* Doc. 169 at 21 ¶ 18].  Accordingly, this Court has jurisdiction over them only if they are compulsory.

Compulsory counterclaims "arise[] out of the same transaction or occurrence that is the subject matter of the opposing party's claim" and "[do] not require adding another party over whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a).

---

[4] Counter Claimants contend that Counter Defendants' motion to dismiss the Counterclaims was filed a week late without leave of the Court.  [Doc. 188 at 1 n.1.]  However, Counter Claimants correctly do not claim that any tardiness constituted a waiver of the jurisdictional argument, as the Court has the duty to address sua sponte the issue of whether it possesses subject-matter jurisdiction.  See *Lynch v. Mt. Vernon Fire Insur.*, 697 F. Supp. 3d 449, 451 (D.S.C. 2023) ("When a federal court does not possess subject-matter jurisdiction over a claim, it must *sua sponte* dismiss the claim.").  Additionally, to the extent that Counter Defendants seek summary judgment regarding the Counterclaims, the motion was timely.  [Doc. 176 (then-existing scheduling order providing a June 11, 2025, motions deadline).]

"Counterclaims not fitting the compulsory counterclaim criteria are permissive." *Tedrow v. NVR, Inc.*, No. 4:24-cv-0227-JD, 2024 WL 3971032, at *2 (D.S.C. Aug. 7, 2024). Whether a counterclaim is compulsory or permissive is determined by consideration of four questions:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?

*Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988). "A court need not answer all these questions in the affirmative for the counterclaim to be compulsory." *Id.* "Rather, the tests are less a litmus, more a guideline." *Id.*

The Court first considers the *Painter* questions as to the Counterclaims against Pinnacle and then considers the questions as to the Counterclaims against Southerlin.

### *Counterclaims Against Pinnacle*

The Court concludes that consideration of the *Painter* questions shows that the Counterclaims against Pinnacle are compulsory. As to the first *Painter* question, there is significant overlap between the questions of fact and law raised in Pinnacle's claims in the Second Amended Complaint and the Counterclaims against it insofar as both largely concern how much Pinnacle owes Defendants under the terms of the Contracts as compared to the amount Pinnacle paid. For this same reason, substantially the same evidence will support or refute both Pinnacle's claims and the Counterclaims and there is

8

a significant logical relationship between the two.[5]  *See Vaughan v. Recall Total Info. Mgmt., Inc.*, 217 F. App'x 211, 223 (4th Cir. 2007) (reasoning that because "accurate calculation" of the parties' contractual obligations was at the heart of both the original action and the counterclaim, "the issues of fact and law are similar, the evidence will overlap, and there is a logical relationship between the two actions").  Finally, Counter Claimants would be barred by res judicata from bringing the Counterclaims against Pinnacle after a final judgment on Pinnacle's claims because the Counterclaims are logically related to Pinnacle's claims and arise from the same transaction or occurrence. *See Beach Co. v. Twillman, Ltd.*, 566 S.E.2d 863, 865 (S.C. Ct. App. 2002) (holding that if a claim that would have constituted a compulsory counterclaim under Rule 13 of the South Carolina Rules of Civil Procedure "is not raised in the first action, a defendant is precluded from asserting the claim in a subsequent action"; noting that "[t]he South Carolina Reporter's Note following Rule 13 [of the South Carolina Rules of Civil Procedure] states: '[c]ounterclaims arising out of the same transaction or occurrence that is the subject of the action are "compulsory" under Rule 13(a) and are barred by res judicata or estoppel by judgment if not asserted'"), *abrogated on other grounds by*

---

[5] Counter Defendants' argument that the Counterclaims are permissive largely depends upon its contention that the "[C]ounterclaims involve alleged breaches of only [two specific] contracts, both of which Waste Connections already has expressly pleaded are **not** at issue in Pinnacle's suit against it." [Doc. 183 at 7 (citing Doc. 152 at 19–20 ¶¶ 16–17); *see id.* at 7–8.]  As Counter Claimants point out, however, that is incorrect.  Rather, the Counterclaims allege, "*Across Pinnacle's 23 contracts* with [Counter Claimants], Pinnacle owes more than $12,000 to [Counter Claimants] for failure to pay amounts due on these contracts, and [the two specifically referenced contracts] *are only two examples* of contracts Pinnacle has breached and for which Pinnacle has an outstanding balance." [Doc. 169 at 21 ¶ 18 (emphasis added).]

9

*Deutsche Bank Nat'l Tr. Co. v. Est. of Houck*, 892 S.E.2d 280, 281–82 (S.C. 2023);[6] *see also Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 218 (4th Cir. 2006) (holding that "the law that would be applied by state courts in the State in which the first diversity court sits determines the claim-preclusive effect of the judgment rendered in the first action" (cleaned up)).  Accordingly, the Court concludes that the Counterclaims against Pinnacle are compulsory and thus that the Court possesses subject-matter jurisdiction over them.

### *Counterclaims Against Southerlin*

The Court reaches the opposite conclusion regarding the Counterclaims against Southerlin, however.  A substantial aspect of demonstrating Southerlin's liability would be showing that he is an alter ego of Pinnacle, which depends on issues of fact and law that are not common with Pinnacle's claims.  Given that difference, the first, third, and fourth prongs point toward the Counterclaims against Southerlin being permissive.  Even assuming that the res judicata consideration points in the opposite direction because Southerlin, as Pinnacle's sole owner, is in privity with Pinnacle, *see Venture Eng'g, Inc. v. Tishman Constr. Co. of S.C.*, 600 S.E.2d 547, 550 (S.C. Ct. App. 2004) ("The doctrine of res judicata provides that final judgment on the merits of an action precludes the parties

---

[6] In *Deutsche Bank National Trust Co.*, the court held that "in cases commenced on or after [August 9, 2023], the question of whether a counterclaim is compulsory [under Rule 13(a) of the South Carolina Rules of Civil Procedure] is governed by the plain language" of that rule.  892 S.E.2d at 282.  For cases commenced prior to that date, as this case was, South Carolina courts used the "logical relationship test" for determining whether a counterclaim is compulsory within the meaning of that rule.  *Id.* at 281.  In this case, the original Complaint was filed in August 2021, the Second Amended Complaint was filed in September 2023, and the original counterclaims were filed in April 2024.  [Docs. 1; 82; 152.]  The Court need not determine which date controls which of the two tests applies because the claims against Pinnacle would be barred under either test.

or their privies from relitigating claims that were or could have been raised in that action." (internal quotation marks omitted)), the Court concludes that the other differences identified are sufficient, on balance, to make the Counterclaims against Southerlin permissive. Because there is no other potential basis for this Court's jurisdiction over the Counterclaims against Southerlin, they are dismissed without prejudice.

**Whether the Counterclaims against Pinnacle are Time Barred**

The Court next turns to the question of whether Counter Claimants' claims against Pinnacle are time barred. Counter Claimants argue that it is inappropriate for Counter Defendants to raise the statute-of-limitation defense on a motion to dismiss and also that Counter Defendants have not identified specific facts that would entitle them to summary judgment based on the statute of limitations. [Doc. 188 at 12–15.] As to the second point, the Court does not agree and concludes that Pinnacle is entitled to summary judgment on the Counterclaims against it.

In South Carolina, the statute of limitations for Counter Claimants' breach of contract and unjust enrichment claims is three years from the date the cause of action accrues. *See Thomerson v. DeVito*, No. 2:18-1571-RMG, 2019 WL 1472580, at *3–4 (D.S.C. Apr. 2, 2019); *see also* S.C. Code Ann. § 15-3-530(1). The statute of limitations is governed by the discovery rule, meaning that the "limitations period begins to run from the date when the injury resulting from the wrongful conduct either is discovered or may be discovered by the exercise of reasonable diligence." *Gillman v. City of Beaufort*, 627 S.E.2d 746, 748 (S.C. Ct. App. 2006). "A cause of action should have been discovered through exercise of reasonable diligence when the facts and circumstances would have

put a person of common knowledge and experience on notice that some right had been invaded or a claim against another party might exist." *Maher v. Tietex Corp.*, 500 S.E.2d 204, 207 (S.C. Ct. App. 1998.)  Thus, the statute of limitations begins to run upon a plaintiff's discovery of "such facts, as would have lead to the knowledge [of the right to bring a cause of action], if pursued with reasonable diligence." *Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*, 386 S.E.2d 798, 800 (S.C. 1989) (internal quotation marks omitted). "Specifically, the discovery rule focuses upon whether the complaining party acquired knowledge of any existing facts sufficient to put said party on inquiry, which, if developed, will disclose the alleged" right of action.  *Id.* (internal quotation marks omitted).

### *The Parties' Positions Concerning Counter Defendants' Entitlement to Summary Judgment*

In a motion to dismiss the Amended Complaint or, in the alternative, for summary judgment, filed October 14, 2022, Counter Claimants summarized the evidence forecasted in the record and asserted that, for each contract on which Pinnacle based its claims, the last service, invoice, or payment date was no later than November 2019. [Doc. 48-1 at 12.]  Based on this earlier position taken by Counter Claimants, and on the documents Counter Claimants cited, Counter Defendants now assert that Counter Claimants were on notice of their potential Counterclaims no later than November 2019.[7]

---

[7] Counter Claimants argue that Counter Defendants have failed to comply with this Court's procedures governing summary judgment that are described in the Amended Scheduling Order.  [Doc. 188 at 14 n.9 (citing Doc. 176 at 2 n.1).]  However, given that Counter Defendants are basing their request for summary judgment on facts relied on by Counter Claimants in an earlier summary judgment motion, the Court concludes that compliance with the summary judgment procedures set out in the Amended Scheduling Order is unnecessary, as the purpose of the summary judgment procedures is to obtain agreement between the parties concerning the applicable facts.

12

[Doc. 183 at 8–12.]  Asserting that there is no basis for tolling, Counter Defendants maintain that the three-year statute of limitations expired on the Counterclaims no later than November 2022, well before the Counterclaims were first filed in April 2024.  [*Id.*]  Counter Claimants, on the other hand, argue that because the Counterclaims against Pinnacle are compulsory rather than permissive, the three-year statute of limitations was tolled by Pinnacle's filing of the initial Complaint.  [Doc. 188 at 11–12.]  Alternatively, they dispute Counter Defendants' assertion that the limitations period began to run no later than November 2019.  [*Id.* at 13–15.]

### *When the Statute Began to Run*

As for when the statute began to run, Counter Claimants point to nothing in the record that calls into question their earlier contention that November 2019 was the latest that service was provided, invoices were issued, or payments were made on the Contracts.  Indeed, the Court concludes that the very documents Counter Claimants relied on in their earlier motion demonstrate that they were on notice of the existence of the Counterclaims no later than November 2019.  [See Doc. 48-1 at 12.]  Although Counter Claimants suggest that more discovery is needed [*id.* at 15 n.10], they have not argued or shown that further discovery would serve any purpose, nor have they explained how additional discovery could create a genuine dispute of a material fact.[8]  The Court

---

[8] "The Court may defer considering a motion for summary judgment 'if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'"  *Keith v. Cartledge*, No. 1:13-1131-RMG, 2014 WL 3867838, at *1 (D.S.C. Aug. 6, 2014) (quoting Fed. R. Civ. P. 56(d)).  "To be successful on a Rule 56(d) request, a party must provide specific reasons why discovery was necessary and identify information that he believes would be adduced at discovery."  *Id.*  Summary judgment should be denied or deferred when "the nonmoving party has not had

13

therefore concludes that the Counterclaims are time barred absent some tolling of the three-year limitations period.

### *Whether Pinnacle's Filing of the Complaint Tolled the Statute of Limitations*

Counter Claimants base their argument that the limitations period was tolled on a rule adopted by several federal circuits, including the Fourth Circuit, that "the institution of [a] suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1419 (3d ed. 1998); *see Burlington Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982). "The foundation for this rule is somewhat uncertain," and "courts appear to have crafted [it] as a matter of federal common law, presenting it as sound policy and necessary to prohibit clever litigation strategies aimed at denying defendants the chance to assert valid counterclaims." *Conn. Gen. Life Ins. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 135 (2d Cir. 2021) (citing Wright & Miller § 1419). The Court concludes that application of this federal tolling rule is not appropriate in this case, however. That is because "in any case in which a state statute of limitations applies . . . *the state's* accompanying rule regarding equitable tolling should also apply." *Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999) (emphasis added); *see Conn. Gen. Life Ins.*, 988 F.2d at 135–36 (holding that the federal rule tolling statutes of limitations for compulsory

---

the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n.5 (discussing precursor to Rule 56(d)). On the other hand, "if the nonmoving party has not been diligent in pursuing discovery or if additional discovery will not create a genuine issue of material fact, a Rule 56(d) motion is properly denied." *Keith*, 2014 WL 3867838, at *1. In this case, Counter Claimants have not specifically raised Rule 56(d), but, in any event, they have not made the showing necessary to be successful.

14

counterclaims did not apply because the claims alleged to be untimely were brought under state law); *see also Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 234 (4th Cir. 2000) (relying on state law to determine whether statute of limitations as to state law counterclaims was tolled); *Douglas v. McCarty*, 87 F. App'x 299, 301 (4th Cir. 2003) (same). Accordingly, the Court instead considers whether South Carolina state law would toll the statute of limitations under the facts before the Court.[9]

"South Carolina [statutory] law provides for tolling of the applicable limitations period by statute in certain circumstances." *Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr.*, 687 S.E.2d 29, 32 (S.C. 2009). None of the statutory exceptions apply in this case, however, and Counter Claimants do not argue otherwise. "In addition to these statutory tolling mechanisms, . . ., in order to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits, the doctrine of equitable tolling may be applied to toll the running of the statute of limitations." *Id.* (cleaned up). "[E]quitable tolling typically applies in cases where a litigant was prevented from filing [his or her claim] because of an extraordinary event beyond his or her control." *Id.* (internal quotation marks omitted). "The equitable power of a court is not bound by cast-iron rules but exists to do

---

[9] The Court notes that the question would be different if the issue were not one of equitable tolling but rather whether an amended pleading relates back to the date of the original pleading. In that case, the Court would apply Rule 15(c) of the Federal Rules of Civil Procedure, and state law would be of no moment. *See Whitaker v. Protective Life Ins.*, No. 6:10-2314-TMC, 2014 WL 12736154, at *3 (D.S.C. Nov. 12, 2014). Here, Defendants did not file an answer to Pinnacle's original Complaint or its Amended Complaint. It was only after Plaintiffs filed their Second Amended Complaint that Defendants, on April 9, 2024, filed an answer and counterclaims for the first time. [Doc. 152.]

fairness and is flexible and adaptable to particular exigencies so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other." *Id.* (internal quotation marks omitted). It "is a doctrine that should be used sparingly and only when the interests of justice compel its use." *Id.*

In this case, Counter Claimants point to nothing that prevented them from bringing their claims within the three-year limitations period. They simply chose not to do so. Counter Claimants have not pointed to any South Carolina case that has equitably tolled the statute of limitations on analogous facts, and the Court is not aware of any.[10] Accordingly, the Court concludes that South Carolina courts would not apply equitable tolling under these circumstances. Thus, the Counterclaims against Pinnacle are time barred, and Pinnacle is entitled to summary judgment on those Counterclaims.

## **CONCLUSION**

For the reasons discussed above, Counter Defendants' motion to dismiss or, in the alternative, for other relief concerning the Counterclaims [Doc. 183] is GRANTED.

---

[10] Counter Claimants point to several federal district court cases from the District of South Carolina in which the court tolled statutes of limitations for state law counterclaims based on the date of the filing of a plaintiff's complaint in federal court where the counterclaims were compulsory. [Doc. 188 at 11–12.] However, all of the cited cases appear merely to apply the federal common law rule, citing *Burlington*, without addressing whether state law governs the question or whether South Carolina courts would toll the limitations periods. *See Koppers Performance Chems., Inc. v. Travelers Indem. Co.*, No. 2:20-cv-2017-RMG, 2021 WL 4060453, at *5 (D.S.C. Sept. 3, 2021); *Butler v Pennington*, 2:15-4455-PMD-BM, 2016 WL 7443257, at *6 (D.S.C. Nov. 28, 2016), *Report and Recommendation adopted by* 2016 WL 7441072 (D.S.C. Dec. 27, 2016); *Ga. Bank & Tr. Co. of Augusta v. Trenery*, No. 3:08-2371-JFA, 2010 WL 3271732, at *7–8 (D.S.C. Aug. 18, 2010); *Whitaker*, 2014 WL 12736154, at *7. Accordingly, the cases provide little insight as to how South Carolina courts would apply state law.

The Counterclaims against Jim Southerlin are DISMISSED without prejudice based on lack of subject-matter jurisdiction, and the Counterclaims against Pinnacle are DISMISSED with prejudice as summary judgment is GRANTED on those claims.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

March 3, 2025
Greenville, South Carolina