**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

PINNACLE WASTE SERVICES, LLC, et al.,

Plaintiffs,

v.

WASTE CONNECTIONS US, INC., et al.,

Defendants.

Case No.: 7:21-cv-02600-JDA

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ..... 1
BACKGROUND ..... 2
*Summary of Claims* ..... 2
*Procedural History* ..... 3
*Discovery* ..... 4
*Settlement Negotiations* ..... 6
OVERVIEW OF THE SETTLEMENT AGREEMENT ..... 7
*Settlement Class* ..... 7
*Settlement Terms* ..... 8
*Released Claims* ..... 8
*Attorneys' Fees, Costs, and Expenses, and Plaintiff's Service Award* ..... 9
LEGAL STANDARD ..... 9
I. The Court should preliminarily certify the proposed Settlement Class because it satisfies the elements of Rule 23(a) and Rule 23(b)(3). ..... 11
A. The proposed Settlement Class satisfies Rule 23(a). ..... 11
1. The proposed Settlement Class is sufficiently numerous. ..... 11
2. Questions of law and fact are common to the proposed Settlement Class. ..... 12
3. Plaintiff's claims are typical of the proposed Settlement Class. ..... 12
4. Representation of the proposed Settlement Class is adequate. ..... 13
5. Persons or entities in the proposed Settlement Class are ascertainable. ..... 13
B. Rule 23(b)(3) requirements are satisfied. ..... 14
1. Common issues predominate. ..... 14
2. A class action is superior. ..... 17
II. The proposed Settlement warrants preliminary approval because it is fair, reasonable, and adequate. ..... 18
A. The proposed Settlement was negotiated at arm's length. ..... 20
B. The relief provided by the proposed Settlement is adequate in light of the costs, risks, and delay of continued litigation. ..... 21
C. The Remaining Rule 23(e)(2) factors are also met. ..... 24
1. Plaintiff and Class Counsel have adequately represented the proposed Settlement Class. 24
2. The proposed Settlement provides an effective method of distributing relief. ..... 25
3. The terms of the proposed request for attorneys' fees, costs, and expenses are reasonable. 25
4. The settling parties have no other agreements. ..... 27

5. The proposed Settlement treats persons or entities in the Settlement Class equitably relative to each other. ... 27

III. The Court should appoint class counsel, the class representative, and the settlement administrator. ... 27

IV. The Court should approve the proposed Notice Plan because it satisfies the notice requirements of Rule 23. ... 28

CONCLUSION ... 31

## TABLE OF AUTHORITIES

*ADESSO Homeowners' Ass'n v. Holder Props., Inc.*, 2017 WL 11272589 (D.S.C. May 23, 2017) 29

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) 11, 17

*Barb v. Heath Consultants, Inc.*, 2024 WL 3292835 (W.D. Va. July 3, 2024) 17

*Berry v. Wells Fargo & Co.*, 2020 WL 9311859 (D.S.C. July 29, 2020) 23

*Black v. USAA Gen. Indem. Co.*, 2025 WL 3637395 (D. Md. Dec. 16, 2025) 10

*Brunson v. La.-Pac. Corp.*, 818 F. Supp. 2d 922 (D.S.C. 2011) 23

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) 15

*CASA de Md., Inc. v. Arbor Realty Tr., Inc.*, 2023 WL 6125531 (D. Md. Sept. 19, 2023) 10

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993) 12

*Ciarciello v. Bioventus Inc.*, 760 F. Supp. 3d 377 (M.D.N.C. 2024) 18

*Deem v. Ames True Temper, Inc.*, 2013 WL 2285972 (S.D.W. Va. May 23, 2013) 24

*deWet v. Rollyson*, 157 F.4th 344 (4th Cir. 2025) 29

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) 18

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) 12

*Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) 21, 22, 24

*Gardner v. Country Club, Inc.*, 2017 WL 11613887 (D.S.C. Jan. 26, 2017) 15

*Gaston v. LexisNexis Risk Sols. Inc.*, 2021 WL 244807 (W.D.N.C. Jan. 25, 2021) 19

*Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434 (D. Md. 1998) 10

*Goodlaxson v. Mayor & City Council of Baltimore*, 776 F. Supp. 3d 311 (D. Md. 2025) 10

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003) 15

*Hammond v. Powell*, 462 F.2d 1053 (4th Cir. 1972) 14

*In re Jiffy Lube Secs. Litig.*, 927 F.2d 155 (4th Cir. 1991) 19, 20, 22

*In re Lumber Liquidators*, 952 F.3d 471 (4th Cir. 2020) 19

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022) 16

*In re MI Windows & Doors,* Inc., Prods. Liab. Litig., 860 F.3d 218 (4th Cir. 2017) 9

*In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) 10

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136 (D.S.C. 2018) 16

*In re Zetia (Ezetimibe) Antitrust Litig.*, 699 F. Supp. 3d 448 (E.D. Va. 2023) 26

*Int'l Bhd. of Elec. Workers Loc. 98 Pension Fund v. Deloitte & Touche LLP*, 348 F.R.D. 35 (D.S.C. 2024) 11

*Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384 (M.D.N.C. 2015), aff'd, 925 F.3d 643 (4th Cir. 2019) 14

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) 14, 15

*Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539 (D.S.C. 2000) 13

*McDaniel v. Century Aluminum Co.*, 2025 WL 1261081 (D.S.C. Apr. 30, 2025) 21

*Millwood v. State Farm Life Ins. Co.*, 2022 WL 4396199 (D.S.C. Sept. 23, 2022) 16

*Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551 (D. Md. 2006) 17

*Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370 (D.S.C. 2015) 12

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) 29, 30

*Parker v. Asbestos Processing, LLC*, 2015 WL 127930 (D.S.C. Jan. 8, 2015) 13

*Reed v. Big Water Resort, LLC*, 2016 WL 7438449 (D.S.C. May 26, 2016) 18, 20

*S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990) 18

*Shelton v. Pargo, Inc.*, 582 F.2d 1298 (4th Cir. 1978) 10

*Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140 (4th Cir. 2014) 30

*Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267 (4th Cir. 2010) 15

*Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99 (W.D. Va. 2000) 15

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, 2012 WL 4061537 (D.S.C. Sept. 14, 2012) 20

*Thomas v. Louisiana-Pac. Corp.*, 246 F.R.D. 505 (D.S.C. 2007) 15

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006) 14

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) 11, 12, 15

Plaintiff Pinnacle Waste Services, LLC, individually and as representative of the proposed Settlement Class defined below (hereinafter "Plaintiff"), submits this Memorandum of Law in Support of its Motion for Preliminary Approval of Class Action Settlement.[1]

**INTRODUCTION**

Plaintiff and Defendants Waste Connections US, Inc. ("WCUS"), Waste Connections of South Carolina, Inc. ("WCSC"), Waste Connections of North Carolina, Inc. ("WCNC"), and Waste Connections Lone Star, Inc. ("Lone Star") (each a "Party" and, collectively, the "Parties") have reached a class settlement that will resolve the Released Claims of the Plaintiff and the Settlement Class in accordance with the Release provisions of the Settlement Agreement and provide a fair resolution to the Settlement Class after having litigated this breach-of-contract class action and three related class actions regarding waste collection services for nearly seven years. Under the proposed Settlement, Defendants will establish a $1.4 million Settlement Fund to pay approved claims for a nationwide settlement class of customers of Defendants and other subsidiaries and affiliates of Waste Connections, Inc. The proposed Settlement is the product of arm's-length negotiations by experienced counsel who are well-informed on a substantial record about the strengths and weaknesses of the case. The proposed Settlement is fair, reasonable, and adequate, and should be preliminarily approved under Fed. R. Civ. P. 23(e).

Pursuant to Rule 23(e), Plaintiff asks the Court to enter the Proposed Order Preliminarily Approving Settlement Class and Providing for Notice, attached here to the Declaration of Oscar Price ("Price Decl."), Ex. 1.E., which will: (i) preliminarily approve the Settlement as fair, reasonable, and adequate; (ii) preliminarily certify the Settlement Class for settlement purposes only under Rule 23; (iii) determine that the proposed Notice of Settlement satisfies Rule 23 and

[1] Capitalized terms used here, if not defined, have the same definitions as in the Settlement Agreement, which is attached as Exhibit 1 to Price Decl.

due process; (iv) approve the Notice Plan and direct dissemination of notice to the Settlement Class; (v) approve the procedures for persons or entities in the Settlement Class to request exclusion from the Settlement Class or object to the Settlement; (vi) preliminarily appoint Plaintiff as Class Representative and Price Armstrong, LLC and Langley Law Firm as Class Counsel for settlement purposes only; (vii) appoint Epiq Class Action & Claims Solutions, Inc. as Settlement Administrator; and (viii) schedule a Final Approval Hearing to consider final approval of the Settlement, any timely objections, any application for attorneys' fees, costs, and expenses, and Plaintiff's request for a service award.

## BACKGROUND

The proposed Settlement is the result of over four years of litigation in the instant action, along with several additional years litigating related cases. The instant action included: (1) the filing of a detailed complaint and two amended complaints; (2) Defendants' multiple motions to dismiss and multiple motions for summary judgment; (3) Defendants' motion to deny class certification; (4) extensive fact and expert discovery; (5) intensive investigation into potential claims and defenses; and (6) a mediation session with a highly experienced mediator that lasted 12 hours.

### *Summary of Claims*

Plaintiff alleges that customers in the proposed Settlement Class contracted with Defendants and other subsidiaries and affiliates of Waste Connections, Inc. for waste disposal services through standard contract agreements. *See* Second Amended Class Action Complaint (ECF 82) ("2d Am. Compl.") ¶¶ 14, 17. Plaintiff alleges that these contracts included a base service rate as well as a provision that authorized Defendants and other subsidiaries and affiliates of Waste Connections, Inc. to increase rates during the term of the contract to reflect increases in inflation (measured by the Consumer Price Index) or pass-through increases in certain costs of

Defendants and other subsidiaries and affiliates of Waste Connections, Inc., such as fuel and materials. *Id.* ¶¶ 14, 18. Plaintiff also alleges that Defendants and other subsidiaries and affiliates of Waste Connections, Inc. imposed a "Fuel & Material Surcharge" that was not tied to any actual increase in fuel or material cost and was therefore an unlawful additional charge. *Id.* ¶¶ 15, 36. Plaintiff alleges Defendants and other subsidiaries and affiliates of Waste Connections, Inc. increased customers' rates and charged fees without proper contractual authorization. *Id.* ¶¶ 15-16. Plaintiff asserts claims for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment on behalf of a putative class of customers. *Id.* § VI (Causes of Action). Defendants (and other subsidiaries and affiliates of Waste Connections, Inc.) deny every aspect of these claims.

***Procedural History***

Plaintiff filed its original complaint in the instant action asserting a nationwide putative class action against WCUS, WCSC, and WCNC on August 13, 2021.[2] ECF 1. On August 8, 2022, WCUS, WCSC, and WCNC filed motions to dismiss for failure to state a claim, which were mooted when Plaintiff filed its First Amended Complaint. ECF 32. WCUS, WCSC, and WCNC again moved to dismiss for failure to state a claim and for summary judgment on statute of limitations grounds. ECF 48. The Court ordered the Parties to begin limited discovery related to the statute of limitations issue and Plaintiff's accounts with Defendants on August 29, 2023. ECF 77. Plaintiff filed its Second Amended Complaint on September 8, 2023, adding Matthew Perry as a plaintiff and Lone Star as a defendant. ECF 82. In response, Defendants filed another motion to dismiss for failure to state a claim and for lack of jurisdiction. ECF 85. Following the limited discovery phase, Defendants moved for summary judgment on the grounds that Plaintiff

---

[2] This procedural history omits the related cases that preceded and partially overlapped with the instant case.

had no damages, and separately moved to deny class certification. ECF 109, 119. The Court denied Defendants' motion for summary judgment without prejudice and denied Defendants' motion to dismiss, in part. ECF 139, 140. Shortly thereafter, the Parties entered into full discovery as described more fully below. On January 7, 2025, the Parties jointly stipulated to partial dismissal limiting the nationwide class to three states: South Carolina, Oklahoma, and Texas. ECF 206. On January 27, 2025, the Court denied Defendants' pending motions to deny class certification and to dismiss. ECF 211, 212.

Following the December 2025 mediation where the Parties reached an agreement in principle, the Parties jointly moved to stay on December 23, 2025, which was granted by the Court. ECF 237, 238. On February 20, 2026, the Court granted the Parties' joint motion to vacate the parties' stipulated dismissal of Plaintiffs' nationwide class claims. ECF 245. Plaintiff now moves for preliminary approval of the proposed Settlement.

***Discovery***

The Parties engaged in continuous, extensive fact and expert discovery for nearly two years as described in more detail below.

On May 23, 2024, Plaintiff served Defendants with requests for production, and on June 24, 2024, Defendants served objections and responses to these requests supplementing those responses on August 7, 2024 following numerous conferences with Plaintiff to discuss the scope of these requests. The Parties ultimately settled on producing documents from WCUS and Waste Connections affiliates doing business in five sample states selected by Plaintiff, which was later further limited to documents from WCUS and Waste Connections affiliates doing business in three states following the joint stipulation entered on January 7, 2025. The major categories of discovery included customer data, contracts, invoices, emails, and budget documents, but there were other categories of significant document review and production. The

Parties agreed that Defendants would produce customer data for the sample states and extensively negotiated the types of customer data to be produced before Defendants began the time intensive task of retrieving the data. The Parties also agreed that Defendants would produce contracts and invoices for 100 random customers in each of the sample states. The Parties also engaged in extensive negotiations to determine the parameters of the email retrieval and production, including the custodians, time period, and key word searches. Defendants ultimately reviewed tens of thousands of emails, which included a significant number of spreadsheets with several tabs and thousands of rows that also needed to be reviewed. Ultimately, Defendants produced several hundred gigabytes of customer data and over 14,000 documents consisting of nearly 50,000 pages through 11 sets of productions.

On June 25, 2024, Plaintiff also served its First Set of Interrogatories. On July 3, 2024, Defendants provide initial responses to these interrogatories in a shorter period than required by Rule 33(b)(2) – eight days – in a good-faith effort to meet and confer with Plaintiff regarding the identification of email custodians. On August 7, 2024, Defendants served an amended response to one of those interrogatories.

Defendants served their first interrogatories and requests for production on October 3, 2023 during the limited discovery period. On November 2, 2023, Plaintiff responded to both sets of discovery requests and served supplemental responses to the interrogatories on November 22, 2023. Then, on March 27, 2025, once the parties entered into full discovery, Defendants served another set of interrogatories and requests for production, and on May 6, 2025, Plaintiff responses to those discovery requests supplementing its responses to the interrogatories on June 26, 2025. In response, Plaintiff produced nearly 10 banker boxes worth of documents by inspection around July 2025, which Defendants reviewed for relevance, evaluated, and deposed

Plaintiff about. On October 2, 2025, Defendants also served requests for admissions, and on November 3, 2025, Plaintiff responded to these requests.

The Parties also deposed multiple fact witnesses. Plaintiff took three 30(b)(6) depositions – deposing Dan Pio, Senior Vice President of Operations, on May 2, 2024 lasting approximately seven hours on the record, Doug Mooneyham, Executive Director of Software Development, on October 22, 2024 lasting approximately 2.5 hours on the record, and Keith Gordon, Vice President of Information Systems, on November 20, 2025 lasting approximately 2 hours on the record.

During the limited discovery period, Defendants took the 30(b)(6) deposition of Plaintiff's corporate representative, Jim Southerlin, which lasted approximately 2 hours on the record. When the Parties entered full discovery, Defendants took the 30(b)(6) deposition of Plaintiff's corporate representative, Jim Southerlin, once again and in his personal capacity as well on July 14, 2025 lasting approximately 7 hours on the record.

The Parties also each retained experts and began the process of building out their expert reports, including hours of meeting with the expert teams as well as considerable time from the experts, who reviewed the information necessary to develop the reports and drafted reports as they approached the deadline in early 2026. Plaintiff's expert analyzed hundreds of gigabytes of customer data from dozens of data fields, which fields had to be hand-selected by counsel (in consultation with Plaintiff's expert) after multiple depositions and productions related to these fields. Defendants retained five experts including an expert on the waste industry, a database expert, an expert on corporate interactions, and two accountants.

***Settlement Negotiations***

The Parties attended an approximately 12-hour mediation session with Jeff Trueman, Esq. Declaration of Jeff Trueman, Esq. ("Trueman Decl."), ¶ 11. Mr. Trueman has extensive

training in mediation and has been mediating for over 20 years. *Id.* ¶¶ 2-8. During this time, he has been involved in over 2,000 mediations, settlement conferences, and arbitrations and has received multiple awards for his work in conflict resolution. *Id.* His mediation practice has covered a wide range of issues including contract disputes. *Id.* ¶ 3.

The mediation session occurred on December 9, 2025 in Washington, D.C. *Id.* ¶ 11. The Parties undertook the mediation in good faith and were represented by competent and experienced counsel. The mediation began at 9 a.m. and ended at 9:25 p.m. and included approximately 14 rounds of offers and counteroffers. *Id.* While the Parties maintained – and continue to maintain – their positions with Plaintiff asserting its claims are meritorious and suitable for class certification and Defendants denying said allegations, the Parties were able to reach an agreement in principle after a full day of mediation.

The Parties executed the Settlement Agreement on June 5, 2026.

## OVERVIEW OF THE SETTLEMENT AGREEMENT

### *Settlement Class*

The Parties' Settlement Agreement defines the "Settlement Class" as:

> All persons and entities, including but not limited to corporations, partnerships, limited liability companies, non-profit organizations, governmental, quasi-governmental, and public bodies, and other organizations, to the extent not excluded below, that arranged for or received solid waste collection services in the United States from any Waste Connections Entity at any time during the Class Period.
>
> Excluded from the Settlement Class are: (i) Waste Connections and any Waste Connections Entity, and each of their respective officers, directors, affiliates, legal representatives, employees, successors, and assigns; (ii) the judge presiding over the Action and any member of the Court's staff and their immediate family members; (iii) any customer that received solid waste collection services pursuant to a Franchise Agreement between a Waste Connections Entity and a municipality or other governmental entity and did not have an individual Service Agreement with a Waste Connections Entity; (iv) any customer that received solid waste collection services from a

> Waste Connections Entity in a Rate Regulated Market; (v) any HOA and any customer receiving solid waste collection services pursuant to an agreement between an HOA and a Waste Connections Entity; (vi) Residential Customers; (vii) any customer with a Service Agreement that contains a binding Class Action Waiver; (viii) all brokers listed on **Exhibit F** and all persons or entities that received solid waste collection services from any Waste Connections Entity as part of an arrangement with a broker listed on **Exhibit F**; and (ix) Temporary Roll-Off Service customers of a Waste Connections Entity.

Price Decl., Exhibit 1, Settlement Agreement § II ¶ 1(mm).

***Settlement Terms***

Defendants will pay $1.4 million into the Settlement Fund for the benefit of the Settlement Class. *Id*. § II ¶ 1(ll). The Settlement Fund will be used to pay Claims of the Settlement Class, any Court-ordered award of attorneys' fees, costs, and expenses to Class Counsel and a service award to Plaintiff, the cost of administration of notice and the settlement itself, all taxes, and any other fees, costs, and expenses approved by the Court. *Id*. §§ II ¶ 1(u), III ¶ 3.

To receive payment, persons or entities in the Settlement Class must submit a Claim in accordance with the procedures set out in the Settlement Agreement. *Id*. § V. The Settlement Administrator will process and review Claims. *Id*. The Settlement Fund will be distributed in equal shares per approved valid Claim via check. *Id*. § IV ¶ 7.

***Released Claims***

Upon the Effective Date of the Settlement, Plaintiff and Settlement Class Members will release their claims against Defendants and the other Released Parties as set forth in the Settlement Agreement. The Agreement does not release (i) claims for personal injury, wrongful death, or property damage (including via subrogation); (ii) any claim to enforce the Settlement

Agreement; and (iii) claims based solely on conduct occurring after the Effective Date. *Id*. § II ¶ 1(dd).

***Attorneys' Fees, Costs, and Expenses, and Plaintiff's Service Award***

Class Counsel intends to apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund, or $466,666, as well as reimbursement of costs and expenses in an amount not to exceed $75,000. *Id*. § IX ¶ 32. Any amounts awarded by the Court for attorneys' fees, costs, and expenses shall be paid solely from the Settlement Fund. *Id.* The proposed Settlement is not contingent on the Court approving Class Counsel's requested fees, costs, and expenses, whether in the requested amounts or in any amount whatsoever, and the Court's ruling on those requests does not affect the validity of the proposed Settlement. *Id.*

Plaintiff will ask the Court to approve a service award of $35,000 in recognition of its time, costs, and efforts in prosecuting the Action, including gathering documents and materials, sitting for depositions, and performing other representative duties. *Id*. § IX ¶ 33. Any such service award shall be paid solely from the Settlement Fund. *Id.* The proposed Settlement is not contingent on the Court awarding Plaintiff a service award in that amount, or in any amount. *Id.*

**LEGAL STANDARD**

When considering whether to approve a class action settlement, courts follow a three-step procedure in accordance with Rule 23. *See* Manual for Complex Litigation (Fourth) §§ 21.632-21.634 (2019); *see also In re MI Windows & Doors, Inc., Prods. Liab. Litig.*, 860 F.3d 218, 220-22 (4th Cir. 2017) (describing that the district court "preliminarily approved" the settlement, directed notice to class members, and later "conducted the fairness hearing and entered a final judgment."). First, the preliminary certification hearing and preliminary fairness evaluation can usually be combined where both class certification and settlement approval are being presented for the court. The judge should make a preliminary determination that the proposed class

satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b) and preliminarily approve the proposed settlement. *See* Manual for Complex Litigation §§ 21.22, 21.632. Second, notice of the settlement is sent to class members. *Id.* § 21.633. Third, the court holds a hearing where class members may be heard concerning the settlement, including a plaintiff's request for a service award and class counsel's request for attorneys' fees, costs, and expenses, during which evidence and argument concerning the settlement's fairness, adequacy, and reasonableness is presented. *Id.* § 21.634. This procedure ensures the due process rights of class members are protected and allows the court to fulfill its role as the guardian of class interests. *See Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434 (D. Md. 1998) (noting the court's "special responsibility" to protect the rights of class members) (citing *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1306 (4th Cir. 1978)). The question at the preliminary approval stage is whether the court is likely to conclude, after notice and a Final Approval Hearing, that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2) and certify the class for purposes of judgment. Fed. R. Civ. P. 23(e)(1)(B); *see also Goodlaxson v. Mayor & City Council of Baltimore*, 776 F. Supp. 3d 311, 319 (D. Md. 2025) (quoting *CASA de Md., Inc. v. Arbor Realty Tr., Inc.*, 2023 WL 6125531, at *4 (D. Md. Sept. 19, 2023)) (holding that the standard for analyzing a settlement at the preliminary approval stage is whether it is "within the range of possible approval"); *Black v. USAA Gen. Indem. Co.*, 2025 WL 3637395, at *7 (D. Md. Dec. 16, 2025) (quoting *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)) (explaining that at the preliminary approval stage, there need only be a " 'basic showing' that the proposed settlement 'is sufficiently within the range of reasonableness so that notice should be given'").

## ARGUMENT

### I. The Court should preliminarily certify the proposed Settlement Class because it satisfies the elements of Rule 23(a) and Rule 23(b)(3).

The Settlement Class should be preliminarily certified – for settlement purposes only – because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied. *Int'l Bhd. of Elec. Workers Loc. 98 Pension Fund v. Deloitte & Touche LLP*, 348 F.R.D. 35, 48 (D.S.C. 2024) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)) (noting that "[a] class action can be certified only if . . . a court is satisfied that the prerequisites of Rule 23(a) have been met and that the action falls within one of the categories under Rule 23(b)")).

Plaintiff must satisfy the requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) a question of law or fact common to the class must exist ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy of representation"). Additionally, one of the three categories found in Rule 23(b) must be satisfied. Fed. R. Civ. P. 23(b). Here, the proposed Settlement Class should be certified under Rule 23(b)(3), which requires that common issues of law or fact predominate and that a class action is superior to other methods of adjudicating the action. Fed. R. Civ. P. 23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (explaining that management of a class action is not an issue with a settlement class).

#### A. The proposed Settlement Class satisfies Rule 23(a).

##### 1. The proposed Settlement Class is sufficiently numerous.

To satisfy the numerosity requirement a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied as the

Settlement Class includes hundreds of thousands of individuals, far more than other courts in this circuit have found to be sufficiently numerous. *See Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993) (numerosity met for a proposed class of nearly 500 individuals); *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 376 (D.S.C. 2015) (numerosity met for a proposed class of over 200 individuals).

**2. Questions of law and fact are common to the proposed Settlement Class.**

Rule 23(a)(2) states that class certification is appropriate only when the case presents "questions of law or fact common to the class." "Although the rule speaks in terms of common questions, 'what matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 338) (emphasis in original). "A single common question will suffice, but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke." *Adair*, 764 F.3d at 360 (internal citations and quotations omitted). Here, Plaintiff asserts that its claims and those of other customers against Defendants depend on a common core of facts and common legal theories of Defendants' potential liability. Plaintiff asserts that class members entered into agreements with essentially the same contractual rate adjustment and fee provisions and paid the same allegedly excessive rate increases and fees, and the question whether Defendants' practices breached those provisions is common to the class. Therefore, the Settlement Class also meets the commonality requirement of Rule 23.

**3. Plaintiff's claims are typical of the proposed Settlement Class.**

Plaintiff's claims are typical of the claims of the Settlement Class as required by Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met if a plaintiff's claim arises from the same

event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Parker v. Asbestos Processing, LLC*, 2015 WL 127930, at *7 (D.S.C. Jan. 8, 2015). Plaintiff's alleged claims arise out of the same alleged course of conduct and are based on the same alleged legal theories as those of the Settlement Class, and Plaintiff has allegedly suffered similar alleged damages as the Settlement Class. Therefore, the typicality requirement is also satisfied.

**4. Representation of the proposed Settlement Class is adequate.**

Rule 23(a)(4) states the Court must find that "the representative parties will fairly and adequately protect the interests of the class." This requirement is a two-pronged inquiry, requiring evaluation of: "(1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000). Class counsel has considerable experience in class action litigation, including numerous successful class resolutions against defendants in the waste collection industry, and there is no reason for the Court to find that counsel is not adequate. *See* "Price Decl.", Ex. 1. Plaintiff and Class Counsel represent that there are no conflicts of interest between Plaintiff or Class Counsel and the Settlement Class, and Plaintiff alleges the same or similar harms as to the absent persons or entities in the Settlement Class. Furthermore, Plaintiff and Class Counsel have prosecuted this litigation diligently and thoroughly, which has demonstrated that they are adequate and that no conflict exists. Therefore, adequacy of representation is also met.

**5. Persons or entities in the proposed Settlement Class are ascertainable.**

The Settlement Class is ascertainable because its members can be identified through objective criteria and Defendants' records. The Fourth Circuit has recognized that Rule 23

contains an implicit threshold requirement that members of a proposed class be "readily identifiable." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654-55 (4th Cir. 2019) (holding that ascertainability was established through phone-record data capable of identifying class members on a large-scale basis) (citing *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972) (noting that class members must be "readily identifiable" at the time of judgment)). The Fourth Circuit has also explained that a class is not ascertainable where identifying its members would require robust fact-finding for each individual. *Krakauer*, 925 F.3d at 658. Here, the Settlement Agreement defines the Settlement Class using objective criteria, and the persons or entities in the Settlement Class can be readily identified and contacted through the records of Defendants, including Defendants' customer data, thus making the persons or entities in the Settlement Class ascertainable. Price Decl., Ex. 1, Settlement Agreement § VI ¶ 21(b).

### B. Rule 23(b)(3) requirements are satisfied.

Rule 23(b)(3) is met for the proposed Settlement Class as common questions of law and fact predominate and resolution under the class action is superior to individual treatment. Fed. R. Civ. P. 23(b)(3).

#### 1. Common issues predominate.

"The predominance requirement is similar to but 'more stringent' than the commonality requirement of Rule 23(a)." *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006). The predominance requirement of Rule 23(b)(3) tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 394 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019) (holding that predominance was satisfied when "questions of law or fact common to members of the class predominate over any questions affecting only individual members"). The inquiry is one of quality, not quantity, and Plaintiff must show that the common conduct of Defendants and other

subsidiaries and affiliates of Waste Connections, Inc. bears on the central issue in the Action. *Id.* That standard is satisfied here.

A single important issue "central to the validity of each one of the claims in a class action, if it can be resolved in one stroke, can justify class treatment." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Dukes*, 131 S. Ct. at 2551) (marks omitted). "The entire notion of predominance implies that the plaintiffs' claims need not be identical, and, as the Supreme Court has noted, a class can meet this requirement even though other important matters will have to be tried separately." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (citation omitted).

Liability is "a focal point for consideration of predominance" and thus where "basic liability can be established readily by common issues" then certification is appropriate. *Gardner v. Country Club, Inc.*, No; 4:13-CV-03399-BHH, 2017 WL 11613887, at *6 (D.S.C. Jan. 26, 2017) (citing *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003)). Where class members "were exposed to the same risk of harm," by being subject to a common practice or policy for example, predominance is generally met. *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010). The need for "individualized proof of damages" alone will not defeat class certification. *Gunnells*, 348 F.3d at 429; *Thomas v. Louisiana-Pac. Corp.*, 246 F.R.D. 505, 516–17 (D.S.C. 2007). Predominance "is normally satisfied where there is an essential common factual link, such as standardized documents and practices." *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 106 (W.D. Va. 2000) (citation omitted).

Plaintiff alleges that the questions at the heart of this case turns on common, rather than individual evidence. An individual question exists where "members of a proposed class will need to present evidence that varies from member to member," while a common question exists

where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (holding that predominance was satisfied where representative proof could be used to answer a central liability question common to the class). Plaintiff claims that the central questions here are common because Defendants and other subsidiaries and affiliates of Waste Connections, Inc. imposed rate increases and fuel surcharge fees on customers that were not contractually allowed and that this affects persons or entities in the Settlement Class in the same exact manner. Plaintiff also asserts that common evidence, namely, contracts and customer data, will establish whether Defendants and other subsidiaries and affiliates of Waste Connections, Inc. are liable to Plaintiff and the persons or entities in the Settlement Class. Plaintiff asserts that every class member entered into effectively identical rate adjustments and fee provisions and predominance is routinely found in such circumstances. *See, e.g.*, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 157 (D.S.C. 2018) ("materially uniform contract" provision supported certification); *Millwood v. State Farm Life Ins. Co.*, No. 7:19-CV-01445-DCC, 2022 WL 4396199, at *3 (D.S.C. Sept. 23, 2022) (certifying class where claims involved "the interpretation of…a standard form contract"); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 157 (D. Md. 2022) (predominance found where form contract at issue).

Any individual issues that remain do not overwhelm the common ones. Because common questions predominate over any questions affecting only individual class members, the first prong of Rule 23(b)(3) is satisfied here.

**2. A class action is superior.**

The proposed Settlement Class satisfies the Rule 23(b)(3) requirement that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." For the superiority requirement, courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The fourth factor does not apply to certification of a settlement class. *Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems."). A class action is superior to other available methods with respect to the other three factors.

The first factor favors class certification because no person or entity in the Settlement Class has means to litigate an individual action against Defendants and other subsidiaries and affiliates of Waste Connections, Inc., and "the individual damages are small compared to the financial burden of litigation." *Barb v. Heath Consultants, Inc.*, 2024 WL 3292835, at *8 (W.D. Va. July 3, 2024); *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 560 (D. Md. 2006) ("With respect to factor (A), the virtual certainty that individual plaintiffs would lack the resources to pursue their individual claims indicates that the interests of putative class members is served by certification."). The second factor favors class certification because there is no similar litigation to this Action that concerns the persons or entities in the Settlement Class. The third factor is neutral here as this is a nationwide settlement class, so there is no particular desirability or undesirability to litigate the claims in the United States District Court for the District of South Carolina over any other forum. Given that the factors either favor class

certification or are neutral, the superiority requirement – the second prong of Rule 23(b)(3) – is satisfied.

## II. The proposed Settlement warrants preliminary approval because it is fair, reasonable, and adequate.

Courts nationwide and in the Fourth Circuit strongly encourage settlement and have found it to be "particularly appropriate" in class actions. *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (stating that there is "strong judicial policy in favor of class action settlement"); *Ciarciello v. Bioventus Inc.*, 760 F. Supp. 3d 377, 395 (M.D.N.C. 2024) (explaining that there is strong policy in favor of class action settlement). Settlement conserves judicial resources and permits the parties to avoid the expense, risk, and delay of continued litigation. *See, e.g.*, *Reed v. Big Water Resort, LLC*, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (highlighting that settlement in class actions "minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources"); *S.C. Nat'l Bank*, 749 F. Supp. at 1423 (holding that "in the class action context in particular, 'there is an overriding public interest in favor of settlement'" considering the expense of litigation and imposition on the judicial system).

Rule 23(e)(2) lists factors for the Court to consider when determining whether settlement merits final approval:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Fourth Circuit's *Jiffy Lube* factors overlap with the factors of Rule 23(e)(2). *See In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991) (establishing the fairness factors within the Fourth Circuit). *Jiffy Lube* requires district courts to conduct a two-level analysis which includes "consideration of the fairness of settlement negotiations and the adequacy of the consideration to the class." *Gaston v. LexisNexis Risk Sols. Inc.*, 2021 WL 244807, at *5 (W.D.N.C. Jan. 25, 2021) (quoting *In re Jiffy Lube Secs. Litig.*, 927 F.2d at 158-59 (establishing the fairness factors within the Fourth Circuit)). The Fourth Circuit continues to apply the *Jiffy Lube* factors when evaluating whether a class-action settlement is fair, reasonable, and adequate under Rule 23(e)(2), while recognizing that those factors "almost completely overlap" with the amended Rule 23(e)(2) factors. *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 n. 8 (4th Cir. 2020).

As set forth below, Plaintiff respectfully submits that the proposed Settlement merits preliminary approval as it is fair, reasonable, and adequate since it satisfies each of the factors under Rule 23(e)(2) and the Fourth Circuit's *Jiffy Lube* factors, warranting notice of the proposed Settlement to the persons or entities in the Settlement Class and scheduling of a Final Approval Hearing.

**A. The proposed Settlement was negotiated at arm's length.**

Rule 23(e)(2)(B) states that the proposal must be negotiated at arm's length. The Fourth Circuit has directed courts to assess the following factors in evaluating the "fairness" of a settlement, and whether the settlement was reached as a result of good-faith bargaining at arm's length:

a. The posture of the case at the time settlement was proposed;

b. The extent of discovery that had been conducted;

c. The circumstances surrounding the negotiations; and

d. The experience of counsel in the area of class action litigation.

*In re Jiffy Lube Secs. Litig.*, 927 F.2d at 159. A settlement is presumed to be fair when it "is achieved through arms-length negotiations." *Reed*, 2016 WL 7438449, at *6.

Here, looking at the first and second *Jiffy Lube* factors, the Parties did not reach an agreement before the issues had been tested through litigation. The Parties engaged in extensive motion practice including motions to dismiss, motions for summary judgment, and Defendants' motion to deny class certification. The Parties also engaged in more than a year and a half of discovery and were near the end of discovery, having reviewed and analyzed hundreds of customer contracts, reviewed customer data for thousands of customers, and worked with their experts when they entered into settlement. ECF 233. Therefore, the first and second *Jiffy Lube* factors favor settlement.

The third *Jiffy Lube* factor favors settlement as well. After more than four years of contested proceedings, the Parties participated in full-day, 12-hour mediation before Jeff Trueman, Esq., an experienced mediator, to discuss settlement. *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, 2012 WL 4061537, at *12 (D.S.C. Sept. 14, 2012) (noting that involvement of a mediator supports the "fairness [of] agreements that are ultimately reached."). The negotiations

were vigorous, and the Parties drew on their extensive experience and knowledge of the merits throughout the negotiations.

During that negotiation, both Parties were represented by experienced counsel, thus the fourth *Jiffy Lube* factor also favors settlement. Class Counsel have extensive experience negotiating major class actions and class action settlements and believe that this proposed Settlement is fair, reasonable, and adequate as the monetary benefits to the persons or entities in the Settlement Class outweigh the risks, costs, and delay of continued litigation.

These circumstances support the conclusion that the Settlement Agreement was the product of informed, arm's-length negotiation guided by an experienced neutral party. *See* Fed. R. Civ. P. 23(e)(2)(B); *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525-26 (4th Cir. 2022) (affirming approval where the settlement occurred after extensive motion practice, discovery, multiple settlement negotiations, and involved experienced class counsel); *McDaniel v. Century Aluminum Co.*, 2025 WL 1261081, at *4 (D.S.C. Apr. 30, 2025) (finding that the settlement reached was the result of a fair process where "the Parties engaged in extensive discovery, identified expert witnesses[,] . . . participated in a multi-day mediation prior to reaching a settlement[,] . . . [c]ounsel for both Parties are experienced litigators, and there is no evidence that the settlement was anything other than the product of arms-length negotiation").

**B. The relief provided by the proposed Settlement is adequate in light of the costs, risks, and delay of continued litigation.**

Rule 23(e)(2)(C)(i) takes into account "the costs, risks, and delay of trial and appeal" when measuring the adequacy of the proposed Settlement. Certifying a Rule 23 settlement class and approving a settlement does not require the Court to forecast the best possible trial result or to decide who would ultimately prevail on the merits. Instead, the question is whether the value obtained through settlement is reasonable when compared with the burden, risk, and delay of

taking the case through the remaining phases of litigation. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975) (stating that a settlement that only amounts to a fraction of possible recovery would not "per se render the settlement inadequate or unfair."). The Fourth Circuit directs courts to assess the following factors, which overlap with Rule 23(e)(2)(C), with respect to adequacy:

a. The relative strength of the plaintiffs' case on the merits;
b. The existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial;
c. The anticipated duration and expense of additional litigation;
d. The solvency of the defendants and the likelihood of recovery on a litigated judgment; and
e. The degree of opposition to the settlement.

*In re Jiffy Lube Secs. Litig.*, 927 F.2d at 159. These factors weigh heavily in favor of finding the proposed Settlement adequate.

Here, *Jiffy Lube* factors one through three favor settlement as the strengths of Plaintiff's claims and Defendants' defenses have been vigorously disputed since the beginning of this litigation. Defendants raised defenses to class certification, including most notably that variations that existed in the contracts of customers were allegedly material, and that the negotiations of those contracts, the pricing, the billing, and in the costs to service varied depending on the customer. Defendants also raised defenses to the merits, including the voluntary payment doctrine, consent, and lawful conduct. While Plaintiff believes its case has merit, it understands the risks of its case and protracted litigation. The Settlement Class would have a long, expensive, and perilous road ahead through the navigation of merits and expert

discovery, class certification briefing, summary judgment briefing, trial and post-trial motions, and likely appellate review in a complex case. Each of those steps would lengthen the case and consume substantial resources with no assurance of a better result for the class. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Flinn*, 528 F.2d at 1173 (stating that consideration of the "complexity, expense, and likely duration of . . . litigation" are factors to consider if a settlement is sufficient).

In fact, the class could end up with no relief as the Court may accept Defendants arguments at class certification, summary judgment, or trial. While the Settlement Class may end up with no relief if litigation continues, the proposed Settlement provides Settlement Class Members with substantial and immediate monetary benefits. The Settlement Agreement establishes a $1.4 million Settlement Fund to resolve the Released Claims of the Plaintiff and the Settlement Class in accordance with the Release provisions of the Settlement Agreement. Price Decl., Ex. 1, Settlement Agreement § II ¶ 1(ll). Participating Class Members who submit valid and timely Claims will receive equal shares of the Net Settlement Fund on a per-approved-Claim basis, so the proposed Settlement offers Settlement Class Members a concrete monetary recovery *now*, rather than requiring them to wait through the stages of contested litigation. Courts routinely approve settlements where prompt monetary compensation to Class Members avoids the expense, uncertainty, and delay of continued litigation. *Cf. Brunson v. La.-Pac. Corp.*, 818 F. Supp. 2d 922, 926-27 (D.S.C. 2011) (weighing the uncertainty and expense of litigation with "significant legal and factual hurdles" versus settlement, which provides "prompt and substantial relief.").

The fourth *Jiffy Lube* factor does not weigh in favor or against approving the settlement as there is no evidence to illustrate any potential risk that Defendants would become insolvent. *Berry v. Wells Fargo & Co.*, 2020 WL 9311859, at *6 (D.S.C. July 29, 2020) (finding the fourth

factor neutral and not giving much weight to its analysis since there is no indication that "Defendants likely could not satisfy a litigated judgment, thus making settlement the only means for claimants to recover at all") (internal quotations and citations omitted). Regarding the remaining *Jiffy Lube* factor, due to the preliminary nature of this motion, Plaintiff is unaware of any opposition to the proposed Settlement. The degree of opposition will be addressed at the final approval stage after the Settlement Class has been given notice of and an opportunity to object to the proposed Settlement.

The benefits of the proposed Settlement, particularly viewed in light of the risks, costs, and delay of further proceedings, weigh heavily in favor of preliminary approval.

### C. The Remaining Rule 23(e)(2) factors are also met.

#### 1. Plaintiff and Class Counsel have adequately represented the proposed Settlement Class.

The record demonstrates that Plaintiff and Class Counsel have adequately protected the interests of the Settlement Class pursuant to Rule 23(e)(2)(A). Over the course of more than four years, Plaintiff and Class Counsel investigated the claims, engaged in extensive discovery, identified and worked with experts, and engaged in motion practice and were preparing to file a motion for class certification. By the time settlement discussions occurred, Plaintiff and Class Counsel had assembled a substantial factual and legal record and could evaluate the strength of their claims. That is the type of solid record and extent of fact-finding Rule 23 contemplates at the preliminary approval stage. *See* Fed. R. Civ. P. 23(e)(2)(A); *Flinn*, 528 F.2d at 1169 (holding that because all discovery was completed, the parties had an ample record to reach a settlement); *Deem v. Ames True Temper, Inc.*, 2013 WL 2285972, at *2 (S.D.W.Va. May 23, 2013) (holding that level of discovery to settle was ample because negotiations ended on the eve of trial).

**2. The proposed Settlement provides an effective method of distributing relief.**

Rule 23 also directs the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). Under the Settlement Agreement, persons or entities in the Settlement Class will receive Notice of Settlement by mail. *See* Declaration of Cameron R. Azari, Esq. ("Azari Decl."), ¶¶ 19-23. Persons or entities in the Settlement Class may submit claims either electronically through the Settlement Website or by mail, and the Settlement Administrator will review claims under procedures set out in the Settlement Agreement. Price Decl., Ex. 1, Settlement Agreement § V ¶¶ 11-12. If a claim is deficient, the Claimant will receive a Notice of Deficiency and have thirty days to cure. *Id*. § V ¶ 13. If a claim is denied, the Claimant will receive a Notice of Denial of Claim, and the Settlement Agreement establishes a review and reconsideration process. *Id*. § V ¶¶ 14-15. Following Notice of Settlement and the filing of Claims, the distribution of the Settlement Fund is straightforward. Approved Claimants will be paid by check from the Net Settlement Fund, and uncashed checks will become void after 90 days. *Id*. § IV ¶ 7. None of the Settlement Fund will revert to Defendants. *Id*. § IV ¶ 8.

The proposed method of distribution is both effective and administratively feasible.

**3. The terms of the proposed request for attorneys' fees, costs, and expenses are reasonable.**

Rule 23(e)(2)(C)(iii) directs the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Settlement Agreement provides that Class Counsel will seek an award of attorneys' fees not to exceed one-third of the Settlement Fund, or $466,666, plus reimbursement of costs and expenses not to exceed $75,000, all payable solely from the Settlement Fund and subject to Court approval. Price Decl., Ex. 1, Settlement Agreement § IX ¶ 32. The request for an award of attorneys' fees

not to exceed one-third of the Settlement Fund is reasonable. *See, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, 699 F. Supp. 3d 448, 462 (E.D. Va. 2023) (holding that "[d]istrict courts in the Fourth Circuit have frequently found that a percentage award of one-third of the Settlement Fund is within the range of reasonable percentage recovery").

These provisions do not undermine the fairness of the proposed Settlement. The Settlement Agreement expressly provides that any application for fees, costs, and expenses is not part of the proposed Settlement itself and will be considered separately by the Court and that the proposed Settlement is not conditioned on the Court approving the requested amounts or any amount at all. Price Decl., Ex. 1, Settlement Agreement § IX ¶ 32. The Agreement further provides that fee negotiations occurred only after the Parties had reached agreement on the material terms of relief for the Settlement Class. *Id.* § IX ¶ 34. These provisions support a finding that the Settlement relief was negotiated independently from the fee request.

Moreover, the timing of the anticipated application is also appropriate. Class Counsel's motion for fees, costs, and expenses and the service award must be filed and posted on the Settlement Website before the Objection and Opt-Out Deadline (*i.e.*, prior to the Final Approval Hearing), giving persons or entities in the Settlement Class a fair opportunity to review the request before deciding whether to object. *Id.* § IX ¶ 31. This also allows the Settlement Class and the Court an opportunity to analyze the reasonableness of the request for attorneys' fees, costs, and expenses more completely at the Final Approval Hearing. Providing persons or entities in the Settlement Class with sufficient time to review and object to the proposed Settlement as well as the attorneys' fees, costs, and expenses is consistent with Rule 23(h)(1). *See* Fed. R. Civ. P. 23(h)(1) (stating that notice of motion for attorneys' fees by class counsel

must be "directed to class members in a reasonable manner"). Therefore, the terms of the proposed request for attorneys' fees, costs, and expenses are reasonable.

#### 4. The settling parties have no other agreements.

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements, but the settling parties have not entered into any other agreements.

#### 5. The proposed Settlement treats persons or entities in the Settlement Class equitably relative to each other.

Rule 23(e)(2)(D) – the final factor – requires the Court to consider whether the Settlement Class is treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). Each approved Claim will receive an equal share of the Net Settlement Fund, subject to rules designed to prevent duplicate recovery for the same service address and to address competing submissions by brokers and their customers. Price Decl., Ex. 1, Settlement Agreement § IV ¶ 7. Since each class member receives an equal share, the proposed Settlement satisfies this requirement.

For the foregoing reasons, the proposed Settlement warrants preliminary approval under Rule 23.

## III. The Court should appoint class counsel, the class representative, and the settlement administrator.

The Court should appoint Price Armstrong LLC and Langley Law Firm as interim Class Counsel pursuant to Rule 23(g). The duty of Class Counsel is to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). In appointing Class Counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Rule 23(g)(1)(a). "When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." Rule 23(g)(2). Class Counsel satisfies these requirements because Class Counsel has extensive experience prosecuting class actions and other complex litigation, including cases involving claims substantially similar to those at issue here. Class Counsel has served as lead counsel in numerous class action settlements which were approved, including similar cases involving waste hauling companies and other service providers, demonstrating their particular expertise in this area. Class Counsel's extensive experience prosecuting class actions was key to the successful resolution of this case.

This experience was essential in identifying and evaluating the claims, navigating the complexities of multi-state litigation, and ultimately achieving the settlement now before the Court. The quality of the result achieved—a substantial recovery from a defendant represented by a prominent national defense firm—is itself evidence of the skill and experience of Class Counsel. Price Decl., ¶ 3.

The Court should appoint Plaintiff as Class Representative as Plaintiff satisfies the requirements of Rule 23(a)(4). *See supra* Section I.A.4.. The Court should also appoint Epiq Class Action & Claims Solutions, Inc. as Settlement Administrator because it is an industry leader in class action administration, having implemented more than a thousand successful class action notice and settlement administration matters, and it is a neutral party that will ensure the fair and efficient administration of the Settlement consistent with Rule 23 and due process requirements. *See generally* Azari Decl.

## IV. The Court should approve the proposed Notice Plan because it satisfies the notice requirements of Rule 23.

Rule 23(c)(2)(B) states:

> For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the proposed Notice of Settlement satisfies the requirements of Rule 23(c)(2)(B) and will be sent to each person and entity in the Settlement Class by United States mail and will be provided on the Settlement Website.

Federal Rules of Civil Procedure 23(e)(1) requires that notice be given "in a reasonable manner to all class members who would be bound. . . ." *See* Fed. R. Civ. P. 23(e)(1); *see also* Fed. R. Civ. P. 23(c)(2)(B) (requiring "the best notice that is practicable under the circumstances"); *ADESSO Homeowners' Ass'n v. Holder Props., Inc.*, 2017 WL 11272589, at *10 (D.S.C. May 23, 2017) (approving notice that "accurately summarizes the settlement terms and advises the Class of its benefits, rights, and limitations," "covers all relevant topics," and "is written and formatted to communicate this information in a clear and concise manner that will be easily understood by members of the Class"). Further, due process requires that notice to persons or entities in the Settlement Class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *deWet v. Rollyson*, 157 F.4th 344, 351 (4th Cir. 2025) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citation omitted)).

The Notice of Settlement describes the Action clearly and concisely, including the nature of the action and the class claims, issues, and defenses, the definition of the class being certified, as well as how to submit a claim, how to be excluded, how to object and the deadlines and procedures for each of these options. *See* Fed. R. Civ. P. 23(c)(2)(B). The Notice of Settlement also explains that a person or entity in the Settlement Class may enter an appearance through an attorney and the binding effect of class judgment on members as well as the benefits of the Settlement, the attorneys' fees, costs, and expenses and service award being sought, and the date and place of the Final Approval Hearing. *Id.*

Upon approval, the Notice of Settlement will be sent by first-class mail to the current or last known address of all reasonably identifiable persons and entities in the Settlement Class. Azari Decl., ¶¶ 19-23. To identify these potential persons or entities in the Settlement Class, Defendants will use commercially reasonable procedures to search their files and provide this information to the Settlement Administrator. Price Decl., Ex. 1, Settlement Agreement § VI ¶ 21. Any notice that is returned will be re-mailed to a forwarding address, if provided. Azari Decl., ¶ 23. If no forwarding address is provided, the Settlement Administrator will utilize advanced address searching, such as skip tracing and re-mail the notice to the located address. *Id*. This is designed to reach all persons or entities in the Settlement Class and thus will fairly apprise persons or entities in the Settlement Class of the Settlement Agreement, including its terms and the benefits, rights, and limitations of the Settlement Class, thereby fully satisfying due process requirements. *See Mullane*, 339 U.S. at 314 (holding that due process requires notice to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014) (highlighting that the Supreme Court as well

as the Fourth Circuit has "routinely recognized that the use of mail satisfies the notice element of due process" when it conveys the relevant information).

Therefore, the Court should also approve the Parties' proposed form and method of giving notice to the persons or entities in the Settlement Class.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Preliminary Approval of Class Action Settlement and enter the Proposed Order Preliminarily Approving Settlement Class and Providing for Notice. Specifically, Plaintiff requests that the Court: (i) preliminarily approve the Settlement as fair, reasonable, and adequate; (ii) preliminarily certify the Settlement Class for settlement purposes only under Rule 23; (iii) determine that the proposed Notice of Settlement satisfies Rule 23 and due process; (iv) approve the Notice Plan and direct dissemination of notice to the Settlement Class; (v) approve the procedures for persons or entities in the Settlement Class to request exclusion from the Settlement Class or object to the Settlement; (vi) preliminarily appoint Plaintiff as Class Representative and Price Armstrong, LLC and Langley Law Firm as Class Counsel for settlement purposes only; (vii) appoint Epiq Class Action & Claims Solutions, Inc. as Settlement Administrator; and (viii) schedule a Final Approval Hearing to consider final approval of the Settlement, any timely objections, any application for attorneys' fees, costs, and expenses, and Plaintiff's request for a service award.

Date: June 8, 2026

Respectfully submitted,

*s/ T. Ryan Langley*
T. Ryan Langley
**THE LANGLEY LAW FIRM, PC**
Federal ID No. 002537
229 Magnolia Street
Spartanburg, SC 29304
Phone: 850-222-2000
ryan@thelangleylawfirm.com

Oscar M. Price, IV
(admitted *pro hac vice*)
Nicholas W. Armstrong
(admitted *pro hac vice*)
T. Graham Cotten
(admitted *pro hac vice*)
**PRICE ARMSTRONG, LLC**
1919 Cahaba Rd
Birmingham, AL 35223
Phone: 205-208-9588
Fax: 205-208-9598
oscar@pricearmstrong.com
nick@pricearmstrong.com
graham@pricearmstrong.com

*Attorneys for Plaintiff*